**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Marcus BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.

Filed April 4, 2011.

George B. Dawson, Holmes, for appellant.

William R. Toal, III, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE, SHOGAN, ALLEN, OLSON, and OTT, JJ.:

OPINION BY DONOHUE, J.:

Marcus Brown ("Brown") appeals from the judgment of sentence entered on June 6, 2008 following his conviction of robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), aggravated assault of a police officer, 18 Pa.C.S.A. § 2702(a)(3), and possession of an instrument of crime ("PIC"), 18 Pa.C.S.A. § 907(a). On appeal, Brown raises two suppression issues as well as weight and sufficiency of the evidence claims. For the reasons set forth herein, we affirm the judgment of sentence.

The relevant facts and procedural history of this case are as follows. On April 5, 2006, at approximately 11:30 a.m., Uma Golla ("Golla") was working as a cashier at an Exxon gas station and convenience store located in East Lansdowne, Delaware County, Pennsylvania. While two customers got tea in the back of the store, Brown, who wore a black coat and a black hat or bandanna, entered and stood near an ATM machine. After the two customers left, Brown asked Golla to show him the location of the sunflower seeds, at which time he pulled a gun out of a brown plastic bag and pointed it at Golla's face. Throwing her a white plastic bag, Brown demanded that Golla give him money and threatened to kill her if she did not. Golla yelled for her manager. When the manager appeared, Brown ran out of the store.

Meanwhile, Chief John Zimath ("Chief Zimath") of the East Lansdowne Police Department was on patrol in an unmarked police vehicle near the Exxon station. At

approximately 11:30 a.m., he observed Brown standing on the sidewalk peeking suspiciously from behind a dumpster at the Exxon station, with a white plastic bag protruding from his coat pocket. After two customers finished pumping gas and drove away from the station, Chief Zimath saw Brown walk quickly into the convenience store. After approximately one minute, Chief Zimath spotted Brown as he ran out of the store, through a parking lot, and into a nearby alley.

Chief Zimath, still inside his vehicle, followed Brown, who jumped into a maroon minivan that was parked on the street and began to drive away. He radioed dispatch to call the Exxon to see if they had had any problems inside. Chief Zimath pulled the minivan over and asked for Brown's driver's license and registration card. When asked from where he was coming, Brown told Chief Zimath that he was en route from a friend's house.

While obtaining Brown's license and registration, Chief Zimath received a call from dispatch informing him that they had spoken to an employee at the Exxon, but that due to a language barrier they could not yet discern if anything had happened inside. At this point, Chief Zimath called for backup officers to come wait with Brown while he investigated the events at the convenience store. Officer David Schiazza ("Officer Schiazza") and Officer Albert DeBella ("Officer DeBella") responded as backup officers.

Chief Zimath drove back to the Exxon and spoke with Golla, who told him that an African-American man had attempted to rob the store by pointing a gun at her and demanding that she fill a white plastic bag he had thrown at her with money. After speaking with Golla, Chief Zimath called Officer DeBella and advised him to take Brown into custody. Just before Chief Zimath's call, Officer Schiazza observed what appeared to be a black handgun inside Brown's minivan on the floor behind the driver's seat. (Police later discovered that it was actually a toy gun colored in with black magic marker, with its barrel taped.)

Officer DeBella asked Brown to step out of the minivan and place his hands behind his back. As Officer Schiazza attempted to handcuff Brown, Brown pulled away. Officer DeBella attempted to stop Brown from fleeing, but Brown grabbed the officer and threw him to the ground. With Officers Schiazza and DeBella in pursuit, Brown ran across the street and onto the lawn of a neighboring house. After being tackled by Officer Schiazza, Brown struggled and flailed his arms, striking the officer on the arm, shoulder and mouth. Chief Zimath responded to a call for backup and found Officers Schiazza and DeBella attempting to subdue Brown. Eventually, the officers handcuffed Brown and recovered the toy gun, a black coat, a black knit hat, and a white knit hat from the minivan. Shortly after the police apprehended Brown, Golla identified Brown as the man who had attempted to rob the convenience store. The police then arrested Brown.

Prior to trial, Brown filed a motion to suppress the toy gun and clothing seized from the minivan. After two evidentiary hearings, the trial court denied the motion to suppress. A jury found Brown guilty of the above-listed crimes and the trial court sentenced him to an aggregate term of 147 to 294 months of imprisonment.[1] Brown filed post-sentence motions, which the trial court denied.

1. Specifically, Brown received a mandatory minimum sentence of 10 to 20 years of imprisonment for robbery; a consecutive sentence of 27 to 54 months of imprisonment for aggravated assault of a police officer; and a

Brown filed a timely appeal with this Court, and by opinion dated March 2, 2009, we affirmed the judgment of sentence. With respect to the trial court's denial of Brown's motion to suppress the evidence seized from the van, we concluded that this ruling was harmless error. In response, the Commonwealth filed an application for reargument/reconsideration, contending that the panel's finding of error on the suppression issue did not reflect existing law. On May 11, 2010, this Court granted reargument *en banc.*

On *en banc* review, we will address the following issues Brown raises:

> 1) Whether the court erred in allowing the prosecution to present evidence of the gun, and clothing found in [Brown's] automobile, after an illegal stop and subsequent illegal search.
>
> 2) Whether the jury's verdict was against the weight of evidence, and
>
> 3) Whether there was insufficient evidence to find Brown guilty of the crimes of which he was convicted.

Appellant's Brief at 4. We also address the issue the Commonwealth frames in its Supplemental Brief filed for purposes of *en banc* review:

> Are exigent circumstances required in Pennsylvania for a warrantless seizure of evidence from a vehicle to be lawful under the plain view doctrine.

Commonwealth's Supplemental Brief at 1.

***Suppression Issues***

█ In connection with our consideration of the suppression issues raised by the parties, we begin by setting forth our standard of review:

> The admissibility of evidence is a matter addressed to the sound discretion of the trial court and [. . .] an appellate court may only reverse upon a showing that the trial court abused its discretion. [W]e consider whether the record supports the suppression courts' factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecutions' evidence and only so much of the defenses' evidence as remains [uncontradicted] within the context of the record as a whole. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression courts' factual findings, reversal of a suppression courts' actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Turner,* 982 A.2d 90, 91–92 (Pa.Super.2009) (quoting *Commonwealth v. Harris,* 888 A.2d 862, 868 (Pa.Super.2005), *appeal denied,* 593 Pa. 746, 931 A.2d 656 (2007)).

*Vehicle Stop and Investigative Detention*

We first address Brown's contention that Chief Zimath's stopping of Brown's van and the subsequent detention of Brown that followed violated his rights under the Fourth Amendment of the U.S. Constitution [2] and Article I, Section 8 of the Pennsylvania Constitution.[3] Brown claims that Chief Zimath "did not have

concurrent sentence of 16 to 32 months of imprisonment for PIC.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const amend. IV.

3. "The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing

reasonable suspicion that criminal activity was afoot," and that as a result the vehicle stop and his detention (while Chief Zimath continued his investigation) were unconstitutional. Appellant's Brief at 12.

Contact between the police and the citizenry fall within three generally recognized classifications: mere encounter, investigative detention and custodial detention or arrest.

> The first of these, a 'mere encounter' (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

*Commonwealth v. Collins,* 950 A.2d 1041, 1046 (Pa.Super.2008) (*en banc*) (quoting *Commonwealth v. Mendenhall,* 552 Pa. 484, 488, 715 A.2d 1117, 1119 (1998)).

In its written opinion prepared pursuant to Pa.R.A.P. 1925(a), the trial court explained that the interaction between Chief Zimath and Brown was an investigative detention, and that Chief Zimath had reasonable suspicion to conduct such a detention:

> In the instant case, Chief Zimath had reasonable suspicion that criminal activity was afoot when he observed [Brown's] actions. He first saw [Brown] in the parking lot of a gas station, peeking around a dumpster in the direction of the convenience store with a white plastic bag protruding from his coat pocket. [Brown] then walked quickly toward the store, where he remained only briefly and then ran out of the store at full speed. [Brown's] surveillance of the store, in conjunction with his flight from the store, combined with Chief Zimath's experience as a police officer, are factors that establish reasonable suspicion that criminal activity was afoot. Therefore, Chief Zimath was justified in pursuing, stopping and investigating [Brown].

Trial Court Opinion, 12/30/08, at 8–9.

We conclude that the record supports the trial court's factual findings and agree with the trial court's legal conclusions here. While stopped at a traffic light, Chief Zimath observed Brown peeking in a suspicious manner from behind a dumpster area at the Exxon in question. N.T., 7/18/07, at 6–7. The officer noted that Brown, who was standing five or six feet away, was wearing a black knit cap and a three-quarter length leather coat, even though it was April and not very cold outside. *Id.* at 7. When two customers left after pumping gas, Chief Zimath watched Brown walk quickly into the convenience store. *Id.* at 10. Approximately a minute later, Brown came running out of the store, through the parking lot, and into a nearby alley. *Id.* at 11. Chief Zimath radioed dispatch to call the convenience store to see if they had had any problems, while he followed Brown in his vehicle and watched him jump into the driver's seat of a maroon minivan. *Id.* at 11–12. At that point, Chief Zimath stopped Brown's vehicle and asked him for his driver's license and registration. Brown supplied the requested documents. *Id.* at 13.

Meanwhile, Chief Zimath heard a radio call placed by dispatch stating that they had a language barrier with the employee

them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, § 8.

at the convenience store and could not gather whether anything had happened there. *Id.* at 15. Chief Zimath radioed for backup officers to stand by Brown's vehicle while he went to the Exxon. At the Exxon, he learned that an attempted robbery with a gun had occurred. *Id.* Chief Zimath testified that only a few minutes passed between the time he saw Brown run from the store and his conversation with the store clerk. *Id.* at 15–16. At that point, he called Officers Schiazza and DeBella to advise them of the attempted robbery and to tell them to arrest Brown. *Id.* at 16.

We conclude that the observations of Chief Zimath, an officer with fifteen years of general police experience and four years as a police chief, gave him reasonable suspicion to detain Brown, and then to order backup officers to remain with Brown as he drove back to the convenience store to investigate the events there. *Id.* at 5–6, 15. The trial court, as the finder of fact at the evidentiary hearings on Brown's motion to suppress, found Chief Zimath's testimony credible, and per our standard of review, we decline to overturn its credibility determinations. As a result, we conclude that the trial court did not err in ruling that Chief Zimath's vehicle stop and detention of Brown did not violate his constitutional rights.

*Warrantless Seizure*

We next address the warrantless seizure of the toy gun and clothing from Brown's minivan. On reargument, the Commonwealth argues that the case of *Commonwealth v. McCree,* 592 Pa. 238, 255, 924 A.2d 621, 631 (2007) controls here. To this end, the Commonwealth contends that although the lead opinion in *McCree* is a plurality decision of three justices, the concurring opinion of then-Justice (now Chief Justice) Castille provides a deciding fourth vote regarding the applicability of the plain view doctrine under the facts presented here. For the following reasons, we agree.

In *McCree,* an undercover police officer completed a controlled purchase of prescription medication (Xanax) from a man identified as "Boyer." The officer asked Boyer for more pills, and Boyer responded that he could get them. Boyer then got into the passenger seat of a nearby Pontiac and spoke to the person sitting in the driver's seat (McCree). Officer Jeffrey Cujdik and his partner were directed to stop McCree, and as Officer Cujdik approached the Pontiac he observed McCree shove an amber container under a seat cushion on top of the driver's seat. Believing the container to be a pill bottle, Officer Cujdik asked McCree to step out of the vehicle, which he did. Officer Cujdik then reached under the seat cushion and recovered the pill bottle, which contained 52 pills later determined to be Xanax. After placing McCree at the back of the Pontiac, he then walked back to the driver's front door and saw two more pill bottles in plain view (in the Pontiac's door pocket),[4] which he also seized and removed from the vehicle.

The trial court denied McCree's motion to suppress the drugs and this Court affirmed that ruling. *Commonwealth v. McCree,* 857 A.2d 188 (Pa.Super.2004), *affirmed,* 592 Pa. 238, 924 A.2d 621 (2007). The Supreme Court granted allowance of appeal to clarify the standards for the plain view exception to the warrant requirement in the Fourth Amendment to the United States Constitution and Article

4. One bottle contained twelve OxyContin pills and the second contained twenty-five Percocet pills.

I, section 8 of the Pennsylvania Constitution. In *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court adopted a three-prong test for application of the plain view doctrine: (1) the police must observe the object from a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object.[5] *Id.* at 136–37, 110 S.Ct. 2301. Our Supreme Court adopted this three-prong test in two subsequent cases, *Commonwealth v. McCullum,* 529 Pa. 117, 132, 602 A.2d 313, 320 (1992) and *Commonwealth v. Graham,* 554 Pa. 472, 480, 721 A.2d 1075, 1079 (1998). In two other cases, however, our Supreme Court described the plain view doctrine as having just two prongs—omitting the third requirement of a lawful right of access to the object. *Commonwealth v. Ellis,* 541 Pa. 285, 297, 662 A.2d 1043, 1049 (1995); *Commonwealth v. Petroll,* 558 Pa. 565, 576, 738 A.2d 993, 999 (1999). Based upon *Ellis* and *Petroll,* this Court in its *McCree* decision determined that it was constrained to decide the case without considering whether or not Officer Cujdik had a lawful right of access to seize the pill bottles.[6] *McCree,* 857 A.2d at 191.

The Supreme Court granted allowance of appeal "to review the narrow issue of whether the Superior Court improperly disregarded *Graham* and *McCullum* when it opined that our decision in *Petroll* allowed police to enter the Pontiac without a warrant." *McCree,* 592 Pa. at 245–46, 924 A.2d 621 at 626 (citations omitted). Reviewing the "critical factual distinctions between the cases," a plurality of three justices of the Supreme Court (Eakin, Saylor, and Fitzgerald)decided that while "*Ellis* and *Petroll* did not specifically reference whether the police must have a lawful right of access to the object seen in plain view, their analysis was not necessarily inconsistent with *McCullum* and *Graham.*" *Id.* at 249, 924 A.2d at 628. As a result, in their Opinion Announcing the Judgment of the Court (the "OAJC"), the plurality held that "under both the Fourth Amendment and Article I, § 8, the plain view exception to the warrant requirement requires a determination of whether the police have a lawful right of access to the object seen in plain view." *Id.*

The plurality then turned to the issue of what constitutes a "lawful right of access" permitting a warrantless seizure of incriminating-looking contraband in a vehicle,[7]

5. The test is sometimes described as having four prongs, though without any fundamental difference in the required proof. *See, e.g., Commonwealth v. Jones,* 605 Pa. 188, 201, 988 A.2d 649, 656 (2010) ("This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself."), *cert. denied,* — U.S. ——, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010).

6. The trial court, in its written opinion submitted to this Court pursuant to Pa.R.A.P. 1925(a), likewise assessed only the first two prongs of the "plain view" exception, finding that 1) the police viewed the toy gun from a lawful vantage-point, and 2) that it was immediately apparent to them that the object was a gun. Trial Court Opinion, 12/30/08, at 9–10.

7. In non-vehicle cases, the "lawful right of access prong" is established by evidence of exigent circumstances requiring immediate seizure without a warrant. *See, e.g., Commonwealth v. Roland,* 535 Pa. 595, 599, 637 A.2d 269, 270–71 (1994) (setting forth factors to be considered in determining whether an exigency exists); *Commonwealth v. Rowe,* 984 A.2d 524, 528 (Pa.Super.2009) ("Since there were no exigent circumstances, Corporal Muse had no lawful right of access to the pipe."); *Commonwealth v. Arnold,* 932 A.2d

and decided to apply Pennsylvania's "limited automobile exception" to address the "lawful right of access" prong. In this regard, the plurality began by noting that both the Fourth Amendment and Article I, Section 8 protect individuals against unreasonable searches and seizures, and warrantless searches or seizures are presumptively constitutionally unreasonable, subject to certain established exceptions. *Id.* at 246–47, 924 A.2d at 626–27; *see also Commonwealth v. Jackson,* 548 Pa. 484, 488, 698 A.2d 571, 572 (1997); *Commonwealth v. Dean,* 940 A.2d 514, 519 (Pa.Super.2008). Under the Fourth Amendment, one such exception is known as the "automobile exception," pursuant to which police do not need a warrant to search the interior of an automobile as long as probable cause exists. *Carroll v. United States,* 267 U.S. 132, 147–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). This exception is grounded in the mobility of vehicles, but applies even if a vehicle is "seized and immobilized." *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (*per curiam* ).

Our Supreme Court has never recognized the federal automobile exception to permit a warrantless search of or seizure from a motor vehicle under Article I, Section 8 of the Pennsylvania Constitution.[8] Instead, in at least five cases, majorities of our Supreme Court have rejected the federal automobile exception in favor of what the plurality in *McCree* dubbed the "limited automobile exception." *Commonwealth v. Baker,* 518 Pa. 145, 149, 541 A.2d 1381, 1383 (1988); *Commonwealth v. Rodriguez,* 526 Pa. 268, 274, 585 A.2d 988, 991 (1991); *Commonwealth v. White,* 543 Pa. 45, 51–52, 669 A.2d 896, 900 (1995); *Commonwealth v. Luv,* 557 Pa. 570, 581, 735 A.2d 87, 93 (1999); *Commonwealth v. Hernandez,* 594 Pa. 319, 328, 935 A.2d 1275, 1280 (2007). Pursuant to the limited automobile exception, warrantless vehicle searches must be accompanied not only by probable cause, but also by exigent circumstances beyond mere mobility—"one without the other is insufficient." *Luv,* 557 Pa. at 581, 735 A.2d at 93; *Hernandez,* 594 Pa. at 328, 935 A.2d at 1280. The plurality in *McCree* emphasized that "[t]his dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence." *McCree,* 924 A.2d at 629–30.

What evidence satisfies the exigency requirement has been a matter of continued

143, 149 (Pa.Super.2007) ("The officers had not secured a warrant and were not able to articulate probable cause and exigent circumstances to enter the apartment. As the officers were unlawfully inside the apartment, their observation of the marijuana pipe in plain view would not allow the seizure of the pipe.").

8. Article I, Section 8 of the Pennsylvania Constitution provides greater protection against unreasonable searches and seizures than is afforded by the Fourth Amendment to the United States Constitution. *See, e.g., Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) (quoting *Commonwealth v. Melilli,* 521 Pa. 405, 412, 555 A.2d 1254, 1258 (1989)) ("Article I, Section 8 of the Pennsylvania Constitution ... may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States by serving as an independent source of supplemental rights."); *Commonwealth v. Sell,* 504 Pa. 46, 66, 470 A.2d 457, 468 (1983) ("Article I, [§ ] 8 ..., as consistently interpreted by [Pennsylvania courts], mandates greater recognition of the need for protection from illegal government conduct offensive to the right of privacy.").

controversy.[9] In *Baker* and *Rodriguez*, the Supreme Court found the exigency requirement to be satisfied where, as a result of a lack of advance notice of the need to search for contraband in a vehicle, it was not "reasonably practicable" for the police to have obtained a warrant prior to the search.[10] In *White* and *Luv*, however, the Supreme Court appeared to add another requirement, namely that the Commonwealth also demonstrate that unless police conducted an immediate warrantless search of the vehicle (or impounded it to obtain a warrant), the occupants of the vehicle might have driven away, resulting in the possible loss of the contraband suspected to be inside.[11] This disagreement in approach found no resolution in *Commonwealth v. Perry*, 568 Pa. 499, 798 A.2d 697 (2002), in which the Supreme Court could not reach any binding consensus on this issue, as the seven justices authored four separate opinions, with no opinion joined by more than one other member of the Court.

The plurality in *McCree* favored the *Baker/Rodriguez* standard, stating that "[w]e have allowed warrantless seizures where police do not have advance knowledge that a *particular* vehicle carrying evidence of crime would be parked in a *particular* locale, ... the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper." *McCree*, 592 Pa. at 252–53, 924 A.2d at 630 (emphasis in original). On this basis, the plurality concluded that the warrantless seizure of the pills bottles passed constitutional muster:

9. In a concurring opinion in *Hernandez*, then-Justice Castille lamented that "[t]his area of the law has not represented this Court's finest jurisprudential hour" and that "Pennsylvania constitutional jurisprudence should be made of sterner stuff." *Hernandez*, 594 at 339–40, 935 A.2d at 1287 (Castille, J., concurring) (quoting *Commonwealth v. Perry*, 568 Pa. 499, 527, 798 A.2d 697, 714 (2002) (Castille, J., concurring)); *see also McCree*, 592 Pa. at 258, 924 A.2d at 633 (Cappy, C.J., concurring) ("[T]he automobile exception in Pennsylvania is the subject of continued controversy in our Commonwealth.").

10. In this regard, the Supreme Court in *Baker* addressed an alternative to an immediate search, namely immobilization of the vehicle while police obtain a warrant. The Court reasoned that "it is not clear that the intrusion arising from immobilization of an automobile is less than the intrusion of searching it." *Baker*, 518 at 149, 541 A.2d at 1383. For this reason, the Court in *Baker* concluded that while immobilization is an alternative to an immediate warrantless search, it is not a requirement. *Id.*

In one subsequent case, *Commonwealth v. Kilgore*, 544 Pa. 439, 677 A.2d 311 (1995), *reversed*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), our Supreme Court reversed the denial of a suppression motion on the ground that one of the police officers at the scene could have immobilized the vehicle while another left to procure a warrant. Because the police failed to immobilize the vehicle, our Supreme Court concluded that "[t]he Commonwealth has failed to meet its burden of establishing that exigent circumstances existed such that it would have been impracticable for police to have obtained a search warrant under the circumstances presented here." *Id.* at 444, 677 A.2d at 313. The U.S. Supreme Court subsequently reversed *Kilgore* on other grounds, *Pennsylvania v. Kilgore*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), and on remand the Pennsylvania Supreme Court vacated its previous order. *Commonwealth v. Kilgore*, 547 Pa. 346, 690 A.2d 229 (1997).

11. Contrary to *Baker* and *Rodriguez*, the Supreme Court in *White* also discounted the importance of the mobility of the vehicle in contributing to exigency: "Although it *sometimes* may be reasonable to search a movable vehicle without a warrant, the movability of the area to be searched is not alone a sufficiently 'exigent circumstance' to justify a warrantless search." *White*, 543 at 52–53, 669 A.2d at 900 (emphasis in original) (quoting *Commonwealth v. Cockfield*, 431 Pa. 639, 644, 246 A.2d 381, 384 (1968)).

Since there was no advanced warning that appellant or his Pontiac would be the target of a police investigation, the limited automobile exception applies here. Thus, Officer Cujdik lawfully accessed the interior of Pontiac under this exception, and while conducting a search, seized all three pill bottles. In sum, access to the Pontiac was authorized by the limited automobile exception, and seizure of the pill bottles was authorized by the plain view exception.

*Id.*

Chief Justice Cappy, joined by Justices Baer and Baldwin, did not join the plurality opinion in *McCree,* concurring only in the result. In particular, Chief Justice Cappy disagreed with the plurality's application of the limited automobile exception, indicating his view that questions remained as to the "existence and parameters of such an exception." *Id.* at 258, 924 A.2d at 633 (Cappy, C.J., concurring). Chief Justice Cappy would instead have justified the warrantless seizure of the pill bottles as a search incident to McCree's arrest. *Id.* at 259, 924 A.2d at 634 (Cappy, C.J., concurring).

Justice Castille authored a separate concurring opinion not joined by any other justice. Justice Castille joined the plurality's OAJC except with respect to its discussion of the "status and contours of the '[limited] automobile exception' to the warrant requirement under Article I, Section 8 of the Pennsylvania Constitution."[12] *McCree,* 592 Pa. at 260, 924 A.2d at 634 (Castille, J., concurring). Regarding the limited automobile exception, Justice Castille stated once again his view that Pennsylvania's approach to vehicle searches should be coextensive with the federal approach under the Fourth Amendment, and therefore confirmed his continued preference for the adoption of the federal automobile exception. *Id.* at 260, 924 A.2d at 635 (Castille, J., concurring) (citing *Perry,* 568 Pa. at 532, 798 A.2d at 717 (Castille, J., concurring)); *see also Luv,* 557 Pa. at 584, 735 A.2d at 95 (Castille, J., concurring); *White,* 543 Pa. at 71, 669 A.2d at 909–10 (Castille, J., dissenting).

With respect to the Supreme Court cases that have adopted some form of the limited automobile exception (including, *e.g., Baker, Rodriguez, White,* and *Luv*), Justice Castille stated that

> [I]t is my view that this Courts' existing Article I, Section 8 ***holdings*** in this area (which do not include a state constitutional analysis under *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991)), at most suggest that, if Article I, Section 8 requires an exigency to justify a probable cause-based warrantless entry of a vehicle (probable cause is the only federal requirement), all that is required is that the probable cause 'arose unexpectedly, i.e., in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose.'

*McCree,* 592 Pa. at 260–61, 924 A.2d at 635 (Castille, J., concurring) (emphasis added) (quoting *Perry,* 568 Pa. at 532, 798 A.2d at 717 (Castille, J., concurring)).

In sum, then, in his concurring opinion in *McCree,* Justice Castille expressed his views that (1) Pennsylvania's approach to warrantless vehicle searches and seizures

12. Justice Castille also made specific reference to his disagreement with the plurality's discussion of *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978), in which the Supreme Court offered two reasons why exigent circumstances justify warrantless searches and seizures under Pennsylvania law: a vehicle is mobile and its contents may not be found if the police could not immobilize it until a warrant is secure, and one has a diminished expectation of privacy in an automobile. *Id.* at 103, 389 A.2d at 106.

pursuant to Article I, Section 8 should be coextensive with the federal approach under the Fourth Amendment—namely, permitting warrantless searches and seizures where probable cause exists, without also requiring the existence of exigent circumstances, and (2) to the extent that prior holdings of the Supreme Court (*Baker, Rodriguez, White,* and *Luv*) indicate that some showing of exigency is required, a lack of advance notice of the need to search the vehicle constitutes exigency for this purpose. On these bases, Justice Castille concurred in the plurality's "ultimate resolution of this case" because probable cause arose unexpectedly in the investigation of an illegal drug transaction and thus "it was not reasonably practicable to expect police to secure a warrant prior to searching the vehicle." *Id.* at 261, 924 A.2d at 635 (Castille, J., concurring).

The plurality's OAJC in *McCree* has no precedential value on its own because it did not command the joinder of a majority of the justices participating in the case. *Interest of O.A.,* 552 Pa. 666, 676 n. 4, 717 A.2d 490, 496 n. 4 (1998) ("While the ultimate order of a plurality opinion, *i.e.,* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority."); *Commonwealth v. Price,* 543 Pa. 403, 407–09, 672 A.2d 280, 282 (1996). In cases where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or disagrees, those portions of agreement gain precedential value. *Commonwealth v. Perez,* 760 A.2d 873, 877 (Pa.Super.2000), *affirmed,* 577 Pa. 360, 845 A.2d 779 (2004). Where, as here, however, the concurrence does not explicitly state its agreement or disagreement with the plurality, we must look to the substance of the concurrence to determine the extent to which it provides precedential value to points of agreement. *Id.*

In reviewing Justice Castille's concurrence in *McCree,* his joinder in the plurality's OAJC (except regarding the limited automobile exception) clearly constitutes agreement with the plurality's position that application of the plain view doctrine requires a determination of whether the police have a lawful right of access to the object; as such, that portion of the OAJC is precedential. Because Justice Castille expressly refused to join (and instead concurred only in the result) in the plurality's description and application of the limited automobile exception, *McCree* has no precedential value with respect to the plurality's explication of the status and parameters of the limited automobile exception generally.[13]

13. Our Supreme Court's next application of the limited automobile exception, in *Commonwealth v. Hernandez,* 594 Pa. 319, 935 A.2d 1275 (2007), also influences our decision to read *McCree* narrowly to apply only in plain view cases. In *Hernandez,* which was decided just six months after *McCree,* a majority of the justices (Chief Justice Cappy and Justices Fitzgerald, Baer, and Baldwin) applied the limited automobile exception to evaluate the constitutionality of a warrantless search of a truck. Importantly, although only 30 minutes had elapsed from the time police were notified of a suspected drug shipment until the traffic stop, the majority did not look to *McCree's* "lack of advance notice and opportunity to obtain a warrant" rationale to satisfy the exigency prong of the limited automobile exception. Instead, the majority in *Hernandez* considered only whether a potential danger to police or others constituted exigent circumstances. *Id.* at 332, 935 A.2d at 1282 ("We hold today, without equivocation, that where there is a potential danger to police or others in the context of a vehicle stop, exigency has been established for purposes of a warrantless search."). Finding that the Commonwealth had not demonstrated that any potential dangers to police existed, the majority concluded that there were "no exigent

As such, we must conclude that Justice Castille's concurrence in *McCree* narrowly inures the plurality's OAJC with precedential value regarding automobile searches and seizures in the following limited respect: where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question.

Applying this precedent to the case *sub judice*, Officer Schiazza observed what appeared to be incriminating contraband, a black handgun, in plain view on the floor of Brown's minivan behind the driver's seat, and did so from a legal vantage-point (a public street). Nothing in the record on appeal establishes that the police had any advance notice of Brown's decision to rob the store, and the police thus had no time or opportunity to obtain a warrant before observing the gun and clothing in plain view behind the driver's seat of the minivan. Under these circumstances, it was not reasonably practicable to expect the police to obtain a warrant prior to the seizure of the contraband, thus fulfilling the third prong of the plain view doctrine—lawful access to the seized objects. Accordingly, since all three prongs of the plain view doctrine were satisfied, the seizure of the toy gun and clothing was constitutionally permissible. Brown's first issue on appeal therefore lacks any merit.

***Weight of the Evidence***

For his second issue on appeal, Brown argues that the jury's verdict was against the weight of the evidence because Golla's testimony at trial was inconsistent and her identification of him was tainted and unreliable. Appellant's Brief at 14. In support of his argument, Brown raises, *inter alia*, the following points: Golla admitted that she only saw the robber for a few seconds; Golla did not provide the police with a description of the robber prior to the time the police brought Brown to Golla for her to identify; Golla identified Brown while surrounded by police; and Golla allegedly made a statement at Brown's preliminary hearing to the effect that Brown was not the man she had previously identified. *Id.* at 14–15.

"For this Court to reverse the jury's verdict on weight of the evidence

circumstances" to satisfy the limited automobile exception. *Id.* at 334, 935 A.2d at 1283.

In a concurring opinion in *Hernandez*, Justice Castille indicated that he would have decided the case based upon the lack of advance notice. *Id.* at 344, 935 A.2d at 1290 ("[I]t was not reasonably practicable for police to obtain a warrant in advance of the vehicle stop. That is enough to decide this case.")(Castille, J., concurring). In so stating, however, Justice Castille made clear that he was relying not upon *McCree* but rather on the "*Baker* line of cases" (which includes, *inter alia*, *Baker*, *Rodriguez*, *White*, and *Luv*, discussed *supra*). *Id.* at 343–44, 935 A.2d at 1289–90 (Castille, J., concurring).

With respect to *McCree*, Justice Castille described its OAJC as "a plurality with respect to the automobile search issue." *Hernandez*, 594 Pa. at 338 n. 1, 935 A.2d at 1286 n. 1 (Castille, J., concurring). He also commented that because the cases recognizing the limited automobile exception had not done so based upon a state constitutional analysis under *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), "I do not view the notion that the Pennsylvania Constitution requires more than the Fourth Amendment in this area as 'settled' or 'established.'" *Hernandez*, 594 Pa. at 339, 935 A.2d at 1287 (Castille, J., concurring). Moreover, "with respect to the contours of the Pennsylvania automobile exception[,] [b]ecause no majority expression emerged from *McCree* on this point, that OAJC is certainly not support for 'establishing' some distinct state constitutional view of the Pennsylvania automobile exception." *Id.* at 340, 935 A.2d at 1287 (Castille, J., concurring).

grounds, we must determine that the verdict is so contrary to the evidence as to 'shock one's sense of justice.'" *Commonwealth v. Johnson,* 910 A.2d 60, 64 (Pa.Super.2006) (citing *Commonwealth v. Spotz,* 552 Pa. 499, 507, 716 A.2d 580, 583 (1998), *appeal denied,* 600 Pa. 774, 968 A.2d 1280 (2009), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999); *Commonwealth v. Lloyd,* 878 A.2d 867, 872 (Pa.Super.2005), *appeal denied,* 585 Pa. 687, 887 A.2d 1240 (2005)).

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 321–22, 744 A.2d 745, 753 (2000)).

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Moye,* 836 A.2d 973, 976 (Pa.Super.2003), *appeal denied,* 578 Pa. 694, 851 A.2d 142 (2004) (quoting *McElrath v. Commonwealth,* 405 Pa.Super. 431, 592 A.2d 740, 742 (1991)). The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Id.* "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *Id.* (quoting *McElrath,* 592 A.2d at 742).

As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness' to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *Id.* (quoting *McElrath,* 592 A.2d at 743). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Id.* Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Id.*

In its opinion submitted pursuant to Pa.R.A.P. 1925(a), the trial court stated that the totality of circumstances surrounding Golla's identification of Brown, including the promptness with which it was made, indicated that the identification was reliable:

> In the case at bar, the victim testified that she first noticed [Brown] while waiting on two other customers who were getting tea. She told the jury that, 'At that time a black man entered the store. He stood near the MAC machine.' After the two customers left, [Golla] stated 'he asked me to show him where the sunflower seeds were.['] He said, 'I can't see them.' According to the victim[,] [Brown] 'pulled a plastic bag with a gun inside and another plastic bag and told me to give me the money, give me the money.' [Brown] pointed the gun at her head and said one time 'kill you.' She testified that

> [Brown] was wearing a black jacket and a black bandana on his head, but that he had nothing on his face at the time he pointed the gun at her. [Golla] told the jury that she was shocked and scared, but maintained steadfastly at trial that [Brown] was the robber.
>
> Further, her testimony about the robbery and her description of the assailant, even to the detail about the presence of the plastic bag, was corroborated by that of Chief Zimath, who made independent observations as he watched from his vantage point outside the store. Under the totality of the circumstances, [Brown's] actions, his dress, the sequence of events throughout the incident, the circumstances under which the victim viewed [Brown] during the robbery, and her first identification all support the reliability of identification.

Trial Court Opinion, 12/30/08, at 6–7 (record citations omitted).

After reviewing the certified record, we agree with the trial court's analysis. Golla provided detailed observations of Brown's appearance that were corroborated by Chief Zimath's testimony. N.T., 3/10/08, at 159–62, 172. She also testified that Brown was a mere six to 12 inches from her when she saw his face, and identified him in person as the robber shortly after the robbery occurred. *Id.* at 168–69, 186–87. The jury, as the finder of fact at trial, heard Golla's testimony as to the circumstances of the robbery, and through its verdict found Golla's identification of Brown to be reliable. As such, the jury's verdict is supported by ample evidence of record, and its verdict does not shock our conscience in any way.

We also note that this Court has upheld in-person identifications conducted under similar conditions as the one in this case. *See Moye,* 836 A.2d at 977 (defendant identified while seated inside of a police van); *Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113, 1120–21 (1981) (defendant identified while handcuffed and seated in the back of a police van, with three police vehicles at the scene). Finally, our review of the preliminary hearing transcript indicates that Golla clearly identified Brown at that hearing. N.T., 8/11/06, at 18–19. Therefore, we find no merit to Brown's argument that Golla was unable to identify him at that time, regardless of any statement she allegedly made to the contrary (and which is not contained in the certified record on appeal).

***Sufficiency of the Evidence***

For his third and final issue on appeal, Brown challenges the sufficiency of the evidence to support his convictions for aggravated assault and PIC. Appellant's Brief at 16–18.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all

evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson,* 947 A.2d 800, 805–06 (Pa.Super.2008), *appeal denied,* 602 Pa. 663, 980 A.2d 606 (2009) (quoting *Commonwealth v. Andrulewicz,* 911 A.2d 162, 165 (Pa.Super.2006)).

*Aggravated Assault*

A person is guilty of aggravated assault of a police officer if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." [14] 18 Pa.C.S.A. § 2702(a)(3). On appeal, Brown contends that the evidence at trial did not establish a violation of section 2702(a)(3) because he did not intentionally cause bodily injury to Officer Schiazza, that he only came into contact with the officer while trying to avoid being handcuffed as part of an allegedly illegal arrest,[15] and that did not intend to injure anyone. Appellant's Brief at 17–18. He additionally alleges that Officer Schiazza did not suffer any lacerations or bleeding, did not receive medical treatment, and that there were no photos of his swollen lip offered into evidence at trial. *Id.*

The record on appeal does not support Brown's version of events. At trial, Officer Schiazza testified that when he attempted to handcuff Brown, Brown pulled away, threw Officer DeBella to the ground, and ran away. N.T., 3/20/08, at 43. Officer Schiazza further testified that after he tackled Brown, Brown struggled violently with him, and that as Brown flailed his arms he struck the officer repeatedly on the arm, shoulder and mouth, causing him to have a swollen lip. *Id.* at 44. Whether the officer's swollen lip constitutes a "bodily injury" for purposes of section 2702(a)(3) is irrelevant, since in a prosecution for aggravated assault on a police officer the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an *attempt* to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. *Commonwealth v. Marti,* 779 A.2d 1177, 1183 (Pa.Super.2001). It was within the jury's province to find that Brown, by throwing Officer DeBella to the ground and then striking Officer Schiazza repeatedly by wildly flailing his arms as he resisted arrest, intended to cause injury to the officers.[16]

14. Section 2702(c)(1) specifically identifies police officers as among the "officers, agents, employees or other persons" referenced in section 2702(a)(3). 18 Pa.C.S.A. § 2702(c)(1).

15. The legality of Brown's arrest, or lack thereof, has no bearing on his conviction for aggravated assault on a police officer. In *Commonwealth v. Biagini,* 540 Pa. 22, 655 A.2d 492 (1995), our Supreme Court stated:

> In 1986 the legislature amended 18 Pa.C.S. § 2702(a)(3) and substituted the words 'making or attempting to make a lawful arrest' with the phrase 'in the performance of duty.' This change broadened the scope of the statute, evidencing an intent to protect officers when effectuating all arrests, even those which are subsequently determined to have lacked probable cause at their inception.

*Id.* at 34–35, 655 A.2d at 498.

16. In this regard, here we reject reliance on cases such as *Commonwealth v. Wertelet,* 696 A.2d 206 (Pa.Super.1997), in which the appellant kicked the arresting officer in the shin with the back of her heel as she was being handcuffed. In *Wertelet,* we indicated that "[t]here is no evidence that appellant reared back and kicked Trooper Funk as hard as she could," and further noted that the officer testified that the injury was nothing more seri-

Viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, as our standard of review requires, we conclude that there was sufficient evidence to enable the jury to find beyond a reasonable doubt that Brown violated section 2702(a)(3). As a result, his sufficiency argument with regard to his conviction for aggravated assault on a police officer lacks any merit.

*PIC*

A person commits the offense of PIC when he "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). An instrument of crime is defined as (1) anything specially made or specially adapted for criminal use, or (2) anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have. 18 Pa.C.S.A. § 907(d).

Although the gun that Brown pointed at Golla turned out to be a toy, it constituted an "instrument of crime" under the above definition. The tape on its barrel and the colorings with a black magic marker evidence that it had been "specially adapted for criminal use." The lawful uses of a toy gun do not include utilizing it in a robbery, particularly where it is obviously used to convey the impression that it is a real gun. Moreover, Golla's testimony that Brown pointed the gun at her face and demanded money is sufficient to establish that Brown possessed the instrument of crime for the purpose of employing it criminally. *See, e.g., Commonwealth v. Cain,* 906 A.2d 1242, 1245 (Pa.Super.2006), *appeal denied,* 591 Pa. 670, 916 A.2d 1101 (2007) (testimony that defendant was the "gun-toting assailant" sufficient to support PIC conviction). For these reasons, we reject Brown's contention that the Commonwealth did not produce sufficient evidence to support his conviction for PIC.

Judgment of sentence affirmed.

ous than "bumping your shin on a coffee table," *Id.* at 212–13. For these reasons, we concluded that this "relatively harmless physical contact with a police officer" did not satisfy the requirements for aggravated assault under section 2702(a)(3). *Id.*