J-S43035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAMAR WILSON | : | |
| | : | |
| Appellant | : | No. 3229 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005070-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAMAR WILSON | : | |
| | : | |
| Appellant | : | No. 3230 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005071-2021

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J:                    **FILED MARCH 26, 2025**

Lamar Wilson appeals from the judgment of sentence, imposing 25 to 50 years of incarceration, after a jury convicted him of attempted murder, two counts of aggravated assault, and related offenses.[1]  He challenges the sufficiency and the weight of the Commonwealth's evidence.  We affirm.

---

[1] *See* 18 Pa.C.S.A §§ 907(a), 2502, 2702(a), 6105(a)(1), and 6106(a)(1).

On April 5, 2019, Wilson and his girlfriend, Roxana Rosario, went to the Hertz Rental Car at the Philadelphia International Airport.  Ms. Rosario rented a red Chevrolet Camaro, with a black convertible top, for two days.

On the last day of the rental, prior to 4:00 a.m., Wilson and Ms. Rosario took the red Camaro to the northeast side of the city.  A surveillance camera recorded the car, which they had parked in an alley to the left of a hookah lounge, Hush Nightclub.  The indisputable video evidence showed that the car they parked was a Camaro; the video showed illuminated, separate, rectangular-shaped taillights to the left, right, and above a gold Chevrolet logo.  *See* Commonwealth's Ex. 41 at 7:44.

Wilson and Ms. Rosario went into Hush Nightclub, where Shamir Brown accidentally bumped into Wilson.  Mr. Brown apologized and walked out the front door to smoke.  However, an "argument broke out . . . a commotion, like yelling [and] shoving" between Wilson and Mr. Brown's three friends (Mr. Brown's cousin Mike, Ginia Gonzalez, and Ms. Gonzalez's Uncle Robert).  N.T., 4/4/23, at 204-05.  They were "pushed out the doorway all at once," along with Wilson and Ms. Rosario.  *Id.* at 205.

The altercation continued for a few moments on the sidewalk with "lots of arguing, cursing . . . and [they] started exchanging words."  *Id.* at 206-07.

Mr. Brown tried to diffuse the situation, but Wilson threatened him and his friends by saying, "I'm about that life; I'll pop the trunk on you."[2] *Id.* at 207.

Wilson then walked towards the red Camaro, which was parked a few feet away. Ms. Gonzalez and her uncle did not take his threat seriously and followed Wilson to the Camaro. They were standing next to Wilson when he did, indeed, "pop" the Camaro's trunk. Wilson retrieved a handgun with a green-laser-sight and shot Mr. Brown multiple times. Mr. Brown dragged himself between two parked vehicles and sheltered behind a sedan.

Wilson and Ms. Rosario quickly got in the Camaro, with Wilson in the driver's seat. As they entered the car, Ms. Gonzalez took out her phone and began entering the passcode to take a picture of the Camaro's license plate. Wilson began backing the car into the street, but, upon seeing Ms. Gonzalez with her phone, he put the car into drive and ran her over. He hung a sharp left and drove the rest of the block on the sidewalk. Wilson then then turned onto the street and sped away.

A nearby police officer heard the gunshots and rushed to the scene in his patrol car. He found the bleeding Mr. Brown, placed him in the back of the patrol car, and drove him to the nearest emergency room. Ms. Gonzalez, her Uncle, and Mike followed in their own vehicle. The hospital's medical team

_____

[2] As relevant to this appeal, the slang phrase of "Pop the Trunk" is defined as "The act of getting a weapon out of the trunk of [one's] vehicle." THE URBAN DICTIONARY ONLINE, Definition of "Pop the Trunk," available at https://www.urbandictionary.com/define.php?term=pop%20the%20trunk (last visited 2/25/25).

saved Mr. Brown's life, although, after several surgeries, two bullets remained lodged inside him. Mr. Brown remained hospitalized for two to three weeks, and he needed several more weeks of bedrest before he could return to work. Ms. Gonzalez also received medical attention at the hospital, but they released her a few hours after she arrived.

After seeing the car's image on surveillance cameras, the police traced the Camaro back to Hertz. They learned that Ms. Rosario returned the Camaro a day later than expected. Hertz also provided investigators with video images of the Camaro and Wilson. Based on this information, the officers produced a photo array with Wilson's picture in the lineup. They took the array to Mr. Brown and Ms. Gonzalez on separate dates and in separate locations.

At first, Mr. Brown was too frightened to pick anyone out of the photos. But, after about an hour, he calmed down. The police presented the array to him a second time, and Mr. Brown identified Wilson as the shooter with 100% confidence. In a separate interview, Ms. Gonzalez picked Wilson with 90% confidence. The police then obtained a warrant for Wilson's arrest, which occurred several months later in a neighboring state.

Following Wilson's return to this Commonwealth, the matter proceeded to a jury trial. During the trial, both Mr. Brown and Ms. Gonzalez identified Wilson as the shooter with 100% confidence.

The jury convicted Wilson, and the trial court sentenced him as stated above. Wilson moved for post-sentence relief, which the trial court denied. He timely appealed.

Wilson raises the following three appellate issues:

1. Whether the evidence was insufficient to convict [him] of all charges, because the Commonwealth failed to introduce sufficient evidence to reliably identify [him] as the person who committed the crimes charged?

2. Alternatively, for aggravated assault as a felony of the second degree and possessing an instrument of crime, whether the Commonwealth failed to prove that [Wilson] caused or attempted to cause bodily injury to [Ms.] Gonzalez with a deadly weapon by [hitting] her with a car . . . . ?

3. Whether the trial court erred in denying the post-sentence motion for a new trial, because the verdict was against the weight of the evidence?

Wilson's Brief at 4.  We address each issue in turn.

*1.  Proof of Identity*

First, Wilson believes there was legally insufficient evidence to identify him as the perpetrator of the crimes charged.  We disagree.

When reviewing the sufficiency of the evidence for a criminal conviction, this Court asks, "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Brown**, 23 A.3d 544, 559 (Pa. Super. 2011) (*en banc*). In doing so, we "may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id.**

"Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* The jury, as the sole finder of fact, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." *Id.* at 560.

Our scope of review is plenary. *See id.*

Here, two witnesses identified Wison as the shooter. They did so first by picking him out of photo arrays on separate dates and in separate locations. Mr. Brown was 100% certain that Wilson was the shooter when he saw his picture in the photo array, and Ms. Gonzalez was 90% certain when she saw him in the photo array. Also, at the trial, both witnesses testified that they were *completely* certain that Wilson was the shooter. Moreover, the Commonwealth offered video evidence proving that the type of car that Ms. Rosario had rented on the dates in question was at the scene and used by Wilson to run over Ms. Gonzalez.

The jury was free to believe this testimony and evidence. *See Brown*, *supra*. We may not substitute our judgment of the facts for that of jury. "The determination of the credibility of a witness is within the exclusive province of the jury." *Commonwealth v. Crawford*, 718 A.2d 768, 772 (Pa. 1998). All of Wilson's arguments on this issue go to the credibility of the witnesses, rather than the legal sufficiency of the Commonwealth's evidence. The jury clearly believed the testimony of the witnesses and the video of the Camaro

- 6 -

being used to commit the crimes. Because there was both testimonial and video evidence establishing that the shooter and driver was Wilson, the Commonwealth presented sufficient evidence of his identity.

Wilson's first claim of error is meritless.

*2.    Proof of Aggravated Assault & Instrument of a Crime*

As his second appellate issue, Wilson contends there was insufficient evidence that he assaulted Ms. Gonzalez with a deadly weapon, when he ran her over with the Camaro. He claims that the Commonwealth offered no evidence to prove his intent to use the Camaro as a deadly weapon. Wilson further argues that, because he did not assault Ms. Gonzalez with the car, he did not possess the car as an instrument of a crime.[3]

The video evidence clearly belies Wilson's argument. Wilson repeatedly insists that he merely backed up, out of the alley, and attempted to flee the scene. In doing so, Wilson claims that he accidently bumped into Ms. Gonzalez as he backed out of the alley. That is not what occurred. Instead of merely backing onto the street, Wilson stopped, put the Camaro into drive, drove it onto the sidewalk, ran over Ms. Gonzalez, and knocked her unconscious.

The learned trial judge, Anthony G. Kyriakakis, writing for the Court of Common Pleas of Philadelphia County, accurately disposed of this issue in his detailed, Rule 1925(a) Opinion as follows:

---

[3] Because this issue also goes to the sufficiency of the Commonwealth's evidence, we reincorporate our scope and standard of review from the first issue here by reference.

A person is guilty of aggravated assault [if] he attempts to cause or intentionally causes bodily injury to another with a deadly weapon. *See* 18 Pa.C.S.A. § 7202(a)(4). A deadly weapon includes any "device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or seriously bodily injury." 18 Pa.C.S.A § 2302. "Bodily injury" is defined as "impairment of physical condition or substantial pain."

A car can qualify was as a "deadly weapon" when used in a way calculated or likely to result in death or serious bodily injury. *See Commonwealth v. Thomas*, 656 A.2d 514, 519 (Pa. Super. 1995) (holding that a car was used as "deadly weapon" where defendant "continued to drive his vehicle, without hitting the brakes, even after he struck the children on a swing set."). In *Thomas*, the Superior Court explained that "when determining whether a weapon is deadly, the manner in which it is used must be considered." *Id.*

Here, the evidence presented at trial was sufficient to show that [Wilson] used the car he was driving as a deadly weapon when he struck Ms. Gonzalez with it. Video footage and testimony from Ms. Gonzalez established that after [Wilson] backed the car into the street, he drove the car forward up onto the sidewalk where Ms. Gonzalez was standing and struck her as she was trying to use her cellphone to take a photograph of the license plate. See [Commonwealth's Ex.] 41 at 6:49-7:23; N.T., 4/4/23, at 210-11. [Wilson] then continued to drive away without stopping. *Id.* at 8:40-9:07.

By driving the car up onto the sidewalk where Ms. Gonzalez was standing, rather than driving away on the street [which was free of traffic at 4:00 a.m., Wilson] used the car in a calculated manner that was likely to produce serious bodily injury. In other words, he used the car in a way that transformed it from a mode of transportation to a deadly weapon. After [Wilson drove the Camaro over Ms. Gonzalez], she lost consciousness. *See* N.T., 4/4/23, at 211-12. She suffered injuries to her knees, legs, and the left side of her face, and she continued to feel soreness from her injuries for a month and a half. *Id.* at 214-15.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient evidence to convict [Wilson] of aggravated assault against Ms. Gonzalez.

Trial Court Opinion, 2/20/24, at 13-14.

We adopted the above analysis as our own. Because there was sufficient evidence that Wilson used the car to assault Ms. Gonzalez, there is equally sufficient evidence that he possessed the Camaro in such a way as to make it the instrument of his assault upon Ms. Gonzalez.

We dismiss Wilson's second claim of error as meritless.

*3.    Weight-of-the-Evidence Claim*

Turning to Wilson's final appellate issue, he challenges the weight of the Commonwealth's evidence to convict him and seeks a new trial. As Wilson correctly acknowledges at the outset of his brief, this Court "reviews a claim relating to the weight of the evidence for an abuse of discretion." Wilson's Brief at 3 (citing **Commonwealth v. Rivera**, 983 A.2d 1211 (Pa. 2009)). However, he neglects to define an abuse of discretion, and his argument then drifts from that deferential standard of review.

Wilson's framing of the issue and his argument reveals that he fundamentally misapprehends our deferential standard of review for this issue. **See** Wilson's Brief at 37-41. Instead of presenting us with an abuse-of-discretion argument, Wilson repeats his argument from his post-sentence argument to the trial court, as if our standard of review were *de novo*.

He says, "the evidence that linked [him] to the commission of any crime was so unreliable that it shocks the conscience." **Id.** at 38. Wilson claims that we "should make [such a] finding here, primarily because there is no reliable identification of [him] as the shooter in this record." **Id.** at 39. Hence,

Wilson essentially asks this Court to substitute its judgment as to whether the verdict shocks our conscience for the judgment of the trial court that the verdict did not shock its conscience.  This we cannot do.

Instead, the trial court determines whether the verdict shocked its conscience.  We then review that determination for an abuse of discretion.  An abuse-of-discretion review is limited to three things, which Wilson omits from his brief.  "An abuse of discretion is not merely an error of judgment but is rather [(1)] the overriding or misapplication of the law, [(2)] the exercise of judgment that is manifestly unreasonable, or [(3)] the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." *Commonwealth v. Sandoval*, 266 A.3d 1098, 1101 (Pa. Super. 2021).  Therefore, when an issue calls for an abuse-of-discretion review, it is not enough to convince the appellate court that "the lower tribunal reached a decision contrary to the decision that the appellate court would have reached." *B.B. v. Dep't of Public Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted).

As pertinent to this issue, Wilson needed to explain how the trial court's decision to deny his weight-of-the-evidence claim (1) overrode the law; (2) was manifestly unreasonable (*i.e.*, was illogical, arbitrary, or capricious); or (3) was based on bias, prejudice, or ill will.  This is a difficult test to meet.  As the Supreme Court of Pennsylvania has often said, "One of the *least assailable* reasons for . . . denying a new trial is the lower court's conviction

that the verdict . . . was not against the weight of the evidence . . . .”
***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis added).

Wilson does not present us with an abuse-of-discretion argument. Thus, he fails to assert – much less persuade this Court – that an abuse of discretion occurred when the trial court found that the jury's verdict did not shock ***that court's*** conscience.

Wilson's final issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2025