J-S34025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: N.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: N.W., A MINOR | No. 2059 MDA 2014 |

Appeal from the Dispositional Order November 5, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-JV-0000551-2014

BEFORE: BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                                    **FILED JUNE 23, 2015**

N.W., a minor,[1] appeals from the dispositional order entered November 5, 2014, by the Dauphin County Court of Common Pleas, Juvenile Division. The juvenile court adjudicated N.W. delinquent on charges of aggravated assault and resisting arrest,[2] and entered a dispositional order placing N.W. on formal probation, requiring attendance at the Harrisburg Abraxas Student Academy and participation in the Abraxas Non-Residential Treatment after-school program. On appeal, N.W. challenges the sufficiency and weight of the evidence supporting her adjudications. For the reasons that follow, we affirm.

---

[1] N.W. was born in July of 2000.

[2] 18 Pa.C.S. §§ 2702(a)(3) and 5104, respectively.

The juvenile court summarized the facts, recounted during the adjudication hearing, as follows:

[N.W.] was charged with Aggravated Assault – Injury to Police Officer, Resisting Arrest, and Criminal Trespass – Defiant Trespasser for an incident that occurred at the Chestnut Pointe Apartments on June 29, 2014. [N.W.] and her family had been residents of Chestnut Pointe Apartments until the family was evicted on October 29, 201[3], and given a no trespass letter.

On June 29, 2014, [N.W.] and her sister [A.B.] were seen at the Chestnut Pointe Apartments by Emil Hohman[3] (hereinafter "Mr. Hohman"), the courtesy officer. Mr. Hohman approached the juveniles and told them they were not allowed on the property. A.B. ignored him, and tried to walk away. Mr. Hohman then called Swatara Township Police Department for assistance.

Officer Timothy Bloss, Officer Justin Wolford, and Corporal Jeremy Barrick … of the Swatara Township Police Department were dispatched to Chestnut Pointe Apartments. Upon arrival, Officer Bloss spoke with Mr. Hohman first, and asked for a copy of the trespassing notice that was provided to [N.W.]'s family. While waiting for Mr. Hohman to return, N.W. and A.B. approached Officer Bloss' patrol car. The juveniles told Officer Bloss that they were visiting family and were allowed on the property as they had already gone to court for the issue. A.B. began to walk past Officer Bloss, who told her to wait as they were not free to go yet. A.B. continued to walk away and Officer Bloss reached for her arm in an attempt to stop her. Officer Bloss then pulled out his handcuffs with the intention of detaining her to gather more information. While Officer Bloss attempted to get handcuffs on A.B., he was suddenly hit on his right side by [N.W.] and fell to the ground on his knees.

Officer Wolford and Corporal Barrick arrived on scene while Officer Bloss was attempting to detain A.B. Officer Wolford witnessed [N.W.] hit Officer Bloss while he was attempting to

_____

[3] We note that the witness's last name is correctly spelled "Hohmann." N.T., 10/24/2014, at 2.

- 2 -

detain A.B. He testified that "[N.W.] came at Officer Bloss from his right-hand side, kind of jumped up or something, and made contact with her body against his which resulted in all of them going to the ground." Corporal Barrick also witnessed [N.W.] strike Officer Bloss. He testified that [N.W.] "ran into Officer Bloss knocking all three parties to the ground.["] At that point, Officer Wolford and Corporal Barrick ran to assist Officer Bloss and physically removed [N.W.] from the scuffle.

Corporal Barrick then attempted to handcuff and restrain [N.W.]. He testified that "[N.W.] was pulling away from me, not listening to my commands to go on her stomach and stop resisting. She began to pull her legs up …, so I unholstered my taser, … told her she would be tased. At that point, she did comply." Both juveniles were then taken into custody.

A.B. testified that [she] and N.W. were visiting family who lived at Chesnut Pointe Apartments and went to visit some friends at the basketball court. While they were walking there, Mr. Hohman was following them. When the officers arrived, A.B. and N.W. walked up to the officer who told them that Mr. Hohman had stated they were not allowed on the property. A.B. then asked if they were allowed to leave and started to walk away, but was pulled back by the officer. A.B. admitted that she did not want Officer Bloss to arrest her and continued to back away. A.B. testified that N.W. was trying to help her get away from Officer Bloss and then all three fell to the ground.

Similarly, N.W. testified that they were on the property visiting family and friends who still lived there. She testified that while Officer Bloss was attempting to detain A.B., N.W. was pulling on A.B.'s waist to help her get out of Officer Bloss' grasp. N.W. testified that while trying to help A.B., Officer Bloss "was backing up and he bumped into a car and he fell on his knee trying to arrest her and then she fell – they both fell when he fell." [N.W.] testified that she did not fall over with A.B. and Officer Bloss.

Juvenile Court Opinion, 2/10/2014, at 1-4 (footnotes and record citations omitted).

On July 2, 2014, a juvenile petition was filed against N.W., charging her with aggravated assault, resisting arrest, and criminal trespass.[4] An adjudication hearing was held on October 24, 2014. At the conclusion of the hearing, the juvenile court judge determined that the charges of aggravated assault and resisting arrest were substantiated, but the charge of criminal trespass was not substantiated. The judge deferred his determination of delinquency pending the results of a psychological examination.

A dispositional hearing was subsequently held on November 5, 2014. At that time, the juvenile court judge adjudicated N.W. delinquent on the charges of aggravated assault and resisting arrest, and placed her on formal probation with attendance at the Harrisburg Abraxas Student Academy, participation in the Abraxas Non-Residential Treatment after-school program, and a curfew. On November 13, 2014, N.W. filed a post-dispositional motion challenging the weight of the evidence supporting her adjudication. She then filed a notice of appeal on December 4, 2014.[5]

_____

[4] 18 Pa.C.S. § 3503(a)(1)(ii).

[5] On December 12, 2014, N.W. filed an application in this Court seeking remand of the appeal so that the juvenile court could address her post-dispositional motion. By order dated January 6, 2015, this Court noted that an appeal filed while a post-dispostional motion is pending may be premature under the Pennsylvania Rules of Juvenile Court Procedure. *See* Order, 1/6/2015, *citing* Pa.R.J.C.. 620. Accordingly, we remanded the appeal and directed N.W. to file a *praecipe* in the juvenile court for the entry of an order denying her post-dispositional motion by operation of law. N.W.
*(Footnote Continued Next Page)*

First, N.W. challenges the sufficiency of the evidence with respect to both adjudications.

As with any sufficiency claim, our review of an adjudication of delinquency is well-settled:

> When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348-349 (Pa. Super. 2013) (quotation omitted), *appeal denied*, 80 A.3d 778 (Pa. 2013).

_____

*(Footnote Continued)* _____

complied with this Court's directive, and, on January 9, 2015, the juvenile court entered an order denying N.W.'s post-dispositional motion. Thereafter, on January 13, 2015, the juvenile court directed N.W. to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). N.W. complied, and filed a concise statement on January 29, 2015.

In the present case, N.W. was adjudicated delinquent on charges of aggravated assault and resisting arrest. "A person if guilty of aggravated assault if [she] … attempts to cause or intentionally or knowingly causes bodily injury to any [police officer] in the performance of duty[.]" 18 Pa.C.S. § 2702(a)(3). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

N.W. contends the evidence was insufficient to demonstrate she caused or attempted to cause bodily injury to a police officer. First, she argues Officer Bloss did not suffer bodily injury, as defined in the Crimes Code. She notes the only injury he sustained was a scrape on his knee, which he treated with a band-aid. Moreover, N.W. points to the fact that Officer Bloss testified he did not even realize he was injured until his adrenaline wore off and he experienced "some pain" in his right knee. N.T., 10/24/2014, at 18. Additionally, N.W. asserts the evidence was insufficient to demonstrate she **intended** to cause bodily injury to the officer. In support of her claim, she emphasizes her own testimony that "her intent was merely to separate her sister from Officer Bloss, not injur[e] Officer Bloss." N.W.'s Brief at 14, citing N.T., 10/24/2014, at 46-48.

Our review of the record reveals more than sufficient evidence to sustain N.W.'s conviction for aggravated assault. This Court has previously opined:

> [I]n a prosecution for aggravated assault on a police officer the
> Commonwealth has no obligation to establish that the officer
> actually suffered a bodily injury; rather, the Commonwealth

must establish **only an attempt to inflict bodily injury**, and this intent may be shown by **circumstances which reasonably suggest that a defendant intended to cause injury**.

***Commonwealth v. Brown***, 23 A.3d 544, 560 (Pa. Super. 2011) (citation omitted and emphasis supplied). Assuming *arguendo*, Officer Bloss did not suffer "bodily injury," as defined in the Crimes Code, we find the Commonwealth demonstrated N.W. acted with the specific intent to cause bodily injury to the officer, notwithstanding her own self-serving testimony to the contrary.

Here, Officer Bloss explained that while he was attempting to handcuff A.B., "all of a sudden from [his] right side a person just almost kind of like tackled [him], threw their whole body into [him], into [his] right side," which caused him to fall to the ground. N.T., 1/24/2014, at 13-14. Corporal Barrick testified that N.W. "ran into and jumped onto Officer Bloss knocking all three parties to the ground." ***Id.*** at 31. Similarly, Officer Wolford described N.W.'s actions as follows:

> I don't think there was very much distance between them to start with so I don't think she got into a full sprint or anything, but **she was moving with a purpose**. It wasn't like she was just walking up behind him. She came at him, jumped up, and knocked him to the ground.

***Id.*** at 26 (emphasis supplied). We conclude N.W.'s actions in tackling Officer Bloss with such force that he fell to the ground was sufficient to demonstrate her intent to cause him bodily injury.

N.W. also challenges her adjudication on the charge of resisting arrest, which is defined in Section 5104 of the Crimes Code as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. N.W. does not challenge the lawfulness of her arrest. Rather, she argues the Commonwealth failed to demonstrate her actions created a substantial risk of bodily injury, since Corporal Barrick did not "incur any injuries trying to detain [her,]" or her actions required substantial force to overcome. N.W.'s Brief at 15.

Again, with our standard of review in mind, we conclude the evidence was sufficient to sustain her adjudication. At the adjudication hearing, Officer Bloss testified that after he finally subdued A.B., he observed both Officer Wolford and Corporal Barrick "attempting to detain" N.W. N.T., 10/24/2014, at 14. Officer Wolford corroborated this testimony by stating that he and Corporal Barrick "physically assisted" to removed N.W. from Officer Bloss and A.B. *Id.* at 27. Corporal Barrick described the scene as follows:

> Officer Wolford and I ran over and physically removed [N.W. from Officer Bloss]. At that point in time, I attempted to handcuff and restrain [N.W.]. She was pulling away from me, not listening to my commands to go on her stomach and stop resisting. She began to pull her legs up in an act that I felt she was going to try to kick me, so I unholstered my taser, held it to her stomach, told her she would be tased. At that point, she did comply, went to her stomach, and she was handcuffed.

*Id.* at 31-32.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence was sufficient to support N.W.'s adjudication on the charge of resisting arrest. First, N.W. created a "substantial risk of bodily injury" to Officer Bloss when she tackled him as he was trying to subdue her sister. It then took two officers to remove her from Officer Bloss. Moreover, as Corporal Barrick tried to restrain her, N.W. pulled her legs back as if to kick him, and only complied with his commands when he placed his taser gun on her stomach, and informed her he would fire if she persisted. Under these circumstances, we conclude the evidence was sufficient for the juvenile court to conclude N.W.'s actions created a substantial risk of bodily injury to both Officer Bloss and Corporal Barrick while they were performing official duties, and her resistance to their commands required the use of substantial force to overcome.

In her final claim, N.W. contends her adjudication was against the weight of the evidence.[6]

Our review of a weight claim in an appeal from a juvenile adjudication is the same as our review of a challenge to the weight of the evidence in an appeal from a criminal conviction:

---

[6] N.W. properly preserved her weight of the evidence claim by raising it in her post-dispositional motion. *See In re J.B.*, 106 A.3d 76 (Pa. 2014).

[W]e may only reverse the [juvenile] court's [adjudication of delinquency] if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the [ ] court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the [juvenile] court palpably abused its discretion in ruling on the weight claim.

Hence, a [juvenile] court's denial of a weight claim is the least assailable of its rulings. Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve.

*In re J.M.*, 89 A.3d 688, 692 (Pa. Super. 2014) (citation omitted), *appeal denied*, 102 A.3d 986 (Pa. 2014).

N.W. argues her adjudications were against the weight of the evidence because both she and her sister testified that she did not strike or jump on Officer Bloss. N.W.'s Brief at 17. Rather, they claimed N.W. was only trying to pull A.B. away from the officer when he lost his balance. *Id.* Moreover, she maintains the "three responding officers who testified gave varying accounts of which officers detained which juveniles, and one of the testifying officers described his memory of the incident as a 'blur'." *Id.*

While we agree N.W.'s and A.B.'s account of the events in question differed from that of the police officers, any conflicts in the testimony were "for the fact finder to resolve." *J.M.*, *supra*, 89 A.3d at 692 (citation omitted). Moreover, our review of the officers' testimony from the adjudication hearing does not reveal "varying accounts" of the events, but rather, corroborative testimony regarding N.W.'s actions in tackling Officer Bloss, in an attempt to free her sister, followed by her obstinate refusal to

- 10 -

comply with the officers' attempts to subdue her. Because N.W. has failed to demonstrate the juvenile court abused its discretion in denying her weight of the evidence claim, her second issue fails.

Therefore, we conclude N.W.'s challenges to both the sufficiency and weight of the evidence supporting her adjudication of delinquency are meritless, and, accordingly, we affirm the dispositional order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015