J-A19001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY SANDS, | |
| Appellant | No. 633 WDA 2014 |

Appeal from the Judgment of Sentence Entered February 20, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004798-2013

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 27, 2015**

Appellant, Anthony Sands, appeals from the judgment of sentence of 6 to 23 months' incarceration, imposed after he was convicted of fleeing or attempting to elude a police officer, 75 Pa.C.S. § 3733(a), recklessly endangering another person (REAP), 18 Pa.C.S. § 2705, hindering apprehension, 18 Pa.C.S. § 5105, and obstructing administration of law, 18 Pa.C.S. § 5101.  On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his convictions.  We affirm.

The trial court summarized the evidence presented at Appellant's trial, as follows:

> On December 25, 2012, Officer Lance Hoyson of the City of Pittsburgh Bureau of Police was dispatched to a residence located at 611 Mellon Street in the Highland Park section of the City of Pittsburgh to investigate the whereabouts of Bennie Wilson, the defendant's brother. Bennie Wilson was the subject of various arrest warrants and police officers received

information that Bennie Wilson was inside that residence. Officer Hoyson proceeded to the residence to conduct surveillance. While he was watching the residence, Officer Hoyson observed a dark-colored, late model sedan drive from the driveway adjacent to the residence. This vehicle began to circle the area and Officer Hoyson testified that the driver of the vehicle was showing some interest in Officer Hoyson's vehicle. Officer Hoyson was concerned that the driver of the vehicle may have identified him as a police officer or that the driver was acting as a lookout for Bennie Wilson. Officer Hoyson moved his vehicle down the street while still maintaining a clear view of 611 Mellon Street. The dark-colored sedan continued to circle the area. While at his new vantage point, Officer Hoyson observed Bennie Wilson run from the front porch of 611 Mellon Street and enter the passenger side of the dark-colored sedan. Officer Hoyson had known Bennie Wilson from prior encounters.

Officer Hoyson radioed Officer Aaron Spangler, who was in a different surveillance position near the residence, to advise of his observations. Officer Spangler radioed back that he saw the vehicle and Officer Spangler began pursuit. Officer Spangler followed the vehicle and maintained radio communication with Officer Hoyson.

Officer Spangler testified that he was part of the surveillance team conducting surveillance at 611 Mellon Street. While Officer Hoyson was located near the residence, Officer Spangler located himself on East Liberty Boulevard right before the intersection with Mellon Street. He heard Officer Hoyson's radio call about Bennie Wilson entering the dark-colored sedan. The dark-colored sedan proceeded toward Officer Spangler's direction and Officer Spangler began pursuit in his unit. He activated the emergency lights and siren. The dark-colored sedan stopped and Officer Spangler exited his police vehicle and approached the driver's side of the dark-colored sedan. Other police units responded to the scene. Officer Kevin Swimkowsky arrived on scene and approached the passenger side of the vehicle.

As he approached the driver's side window, Officer Spangler observed Bennie Wilson sitting in the passenger seat. Officer Spangler ordered the driver to shut the vehicle off. The driver was sitting back with his hands still on the wheel. The driver did not comply with Officer Spangler's commands to shut the vehicle off. Officer Spangler began shouting at the driver. At

this point, Officer Spangler could not see Bennie Wilson's hands and the driver persisted in his refusal to shut the vehicle off. Officer Spangler then drew his service firearm. The driver looked at Officer Spangler and quickly accelerated the vehicle. The vehicle headed directly toward a police patrol wagon that had been parked to the right front side of the dark-colored sedan in an effort to block it in. Officer Steven Schueler was standing outside the patrol wagon. As the dark-colored sedan approached him, Officer Schueler fired his service firearm toward the driver's side windshield of the dark-colored sedan. The dark-colored sedan made slight contact with the patrol wagon. The dark-colored sedan then sped off. At trial, Officer Spangler identified [Appellant] as the driver of the dark-colored sedan.

After the dark-colored sedan sped off, Officer Spangler and other officers began pursuit. Officer Spangler reached speeds between 50-60 miles per hour during the chase. The posted speed limit was 25 miles per hour. The police officers eventually lost pursuit and the defendant's vehicle avoided capture that evening.

Officer Spangler was shown a photo array the day after the incident to help him identify the driver of the dark-colored sedan. Upon viewing the array, Officer Spangler pointed to a person in the array that [was not Appellant].[1] Officer Spangler credibly explained that the person in the array looked similar to the driver of the dark-colored sedan but he testified that he [was not] 100[ percent] certain. He was shown another photo array on January 23, 2013 and he positively identified [Appellant] as the driver when shown that photo array. He also identified [Appellant] as the driver during the trial.

Neither [Appellant] nor Bennie Wilson were apprehended on the night of the incident. However, the vehicle was recovered that night. Trial evidence established that there were bloodstains on the emergency brake in the center console area of [Appellant's] vehicle. There was blood on the passenger door, the passenger seat and the passenger door threshold. DNA evidence confirmed that the blood on the passenger's seat and

_____

[1] The Commonwealth noted in closing argument that Appellant's photograph was not included in the array shown to Officer Spangler the day after the incident. N.T. Trial, 12/2/13, at 98.

inside door handle matched the DNA sample extracted from [Appellant's] blood. DNA testing indicated that [Appellant] could not be excluded as a contributor of the DNA found on the inside door handle from the driver's side door, on the steering wheel and on the gear shift of the vehicle. Fingerprint evidence determined that Bennie Wilson's fingerprints were located on the driver's side door of the vehicle. Trial evidence also established that Bennie Wilson did not have any injuries consistent with a gunshot wound.

[Appellant] was arrested on January 17, 2013 on charges unrelated to this case. [Appellant] had, though, been developed as a potential suspect in this case. While [Appellant] was being transported to the Allegheny County Jail after his arrest, police officers noticed that he had an injury to his right hand which was wrapped in a bandage. [Appellant] would not disclose the nature of his injury to the police officers. After consulting with the officers involved in the January 17th arrest, the officers involved in this case arrested [Appellant] for his actions in this case.

[Appellant] also testified in this case. [Appellant] said that he was sitting in the passenger seat of the vehicle and that his brother, Bennie Wilson, was the driver. [Appellant] said that after the police stopped the vehicle, his brother, Bennie Wilson, pulled off, attempting to elude the police. [Appellant] testified that the police fired two shots into the vehicle, one of which hit his right hand. [Appellant] also testified that sometime after he and his brother got away from the police, he was interviewed by police officers. [Appellant] admitted that during that interview, he told the police officers that the injury to his hand was an old injury. [Appellant] testified that the reason he told the police that the injury to his hand was an old injury was that he was "scared for [his] life" of the interviewing police officers, even though they had not threatened him in any way because "[e]very police officer is the same to [him]."

Trial Court Opinion (TCO), 9/24/14, at 2-6.

Based on this evidence, the jury convicted Appellant of the above-stated offenses. It acquitted him of a charge of aggravated assault. On February 20, 2014, the court sentenced Appellant to 6 to 23 months' incarceration for the conviction of fleeing or attempting to allude a police

officer. The court did not impose any further penalty for Appellant's remaining offenses. Appellant filed a timely post-sentence motion, which was denied on March 20, 2014. He then filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents three questions for our review:

> 1. Was the evidence sufficient to establish beyond a reasonable doubt that [Appellant] fled or attempted to elude officers, and recklessly endangered another person, by his actions while driving a vehicle?
>
> 2. Was the evidence sufficient to establish beyond a reasonable doubt that [Appellant] obstructed the administration of law by thwarting attempts to serve warrants upon his brother?
>
> 3. Were the verdicts of guilty so contrary to the weight of the evidence as to shock the conscience and require a new trial?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant first challenges the sufficiency of the evidence to sustain his convictions of REAP and fleeing or attempting to elude a police officer.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, Appellant attacks both of these convictions by arguing that the evidence failed to prove "that he was the person driving the vehicle on the

evening of December 25, 2012, that sped away from a roadside stop and nearly hit an officer, causing the officer to shoot twice at the car." Appellant's Brief at 15. Initially, two of Appellant's arguments in support of this issue do not qualify as challenges to the sufficiency of the evidence; instead, they properly are considered as weight-of-the-evidence claims. Specifically, Appellant maintains that the testimony of "the nine law enforcement officers" who took the stand at trial was so contradictory that it could not support the trial court's conclusion that he was the driver of the vehicle. Appellant also attacks the reliability of certain of those officers' out-of-court, and in-court, identifications of him as the person driving the vehicle on December 25, 2012. This Court has found that each of these types of claims go to the weight, not the sufficiency, of the evidence. **See Commonwealth v. Wilson**, 825 A.2d 710, 713-714 (Pa. Super. 2003) ("A sufficiency of the evidence review … does not include an assessment of the credibility of the testimony offered by the Commonwealth. Such a claim is more properly characterized as a weight of the evidence challenge.") (citations omitted); **Commonwealth v. Brown**, 23 A.3d 544, 557-558 (Pa. Super. 2011) (assessing an argument that a witness' identification of the defendant "was tainted and unreliable" as a challenge to the weight of the evidence). Accordingly, we will not address these two arguments in reviewing Appellant's challenge to the sufficiency of the evidence.

Appellant also argues, however, that "[t]here are … issues surrounding the sufficiency of the physical evidence[]" presented by the Commonwealth.

He essentially maintains that the DNA, blood, and fingerprint evidence discovered in the car did not necessarily prove he was the driver of the vehicle. Appellant intertwines this argument with his claim that the officers' testimony was not credible. *See* Appellant's Brief at 25-26 ("Taken together with the inconsistent and contradictory nature of the identification testimony in this matter, the DNA/blood evidence and fingerprint evidence combine to establish that the evidence [was] insufficient to support the verdicts of guilt beyond a reasonable doubt."). Standing alone, Appellant's assertion that the physical evidence did not prove his guilt is unconvincing. We reiterate the well-established principle that the Commonwealth's evidence "may be *entirely* circumstantial as long as it links the accused to the crime beyond a reasonable doubt." *Koch*, 39 A.3d at 1001 (emphasis added) (citing *Moreno*, 14 A.3d at 136); *see also Commonwealth v. Haight*, 50 A.3d 137, 140 (Pa. Super. 2012) ("The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence."). Thus, even if Appellant is correct that the physical evidence did not demonstrate his guilt, that fact alone would not render the *totality* of the evidence insufficient to support his convictions.

We also point out that the trial court did not rely on the physical evidence to conclude, beyond a reasonable doubt, that Appellant was the driver of the vehicle. Instead, the court cited the following evidence to support that determination:

- 7 -

Officer Spangler specifically identified [Appellant] as the driver of the vehicle during the incident in question. Officer Spangler testified that he was able to observe [Appellant] during the incident that he subsequently selected [Appellant] from a photo array. This Court found the testimony of Officer Spangler to be credible. He had an opportunity to observe [Appellant] during the incident, albeit for a short period of time. His observations came from a vantage point that was only feet away from [Appellant] while he was standing near the driver's side window of the vehicle. During the initial photo array, which did not include [Appellant's picture], Officer Spangler was not certain of the identity of the driver. After reviewing a second photo array that included [Appellant's picture], Officer Spangler positively identified [Appellant]. Moreover, the evidence was clear that Officer Schueler fired shots through the windshield toward the driver's side of the vehicle. [Appellant] admitted he was shot during the incident. Numerous police officers testified that Bennie Wilson was in the passenger seat during the incident and trial evidence established that Bennie Wilson did not suffer any gunshot wounds during the incident. This Court believes the evidence was more than sufficient to establish that [Appellant] was the driver of the vehicle.

TCO at 7-8. We agree with the trial court. Accordingly, we conclude that Appellant's challenge to the sufficiency of the evidence to sustain his convictions of REAP and fleeing or attempting to elude a police officer is meritless.

In Appellant's next issue, he avers that the evidence was insufficient to sustain his conviction of obstructing administration of law, defined in 18 Pa.C.S. § 5101, as follows:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other

means of avoiding compliance with law without affirmative interference with governmental functions.

Appellant argues that to prove the offense of obstructing the administration of law, the Commonwealth had to demonstrate that he "knowingly interfere[d] or obstruct[ed] the officers from carrying out their purpose." Appellant's Brief at 27. He maintains (without citation to any legal authority) that to meet this burden, the Commonwealth was required to demonstrate that Appellant knew the officers were attempting to execute arrest warrants for Wilson on December 25, 2012. Appellant avers that the Commonwealth did not proffer any evidence to prove this fact.

In response, the Commonwealth provides a detailed summary of the circumstantial evidence which proved that Appellant knew Wilson was wanted by police, and that Appellant intentionally, and physically, interfered with Wilson's apprehension:

> As set forth in detail in the previous argument, the evidence sufficiently established that [A]ppellant, Wilson's brother, was the driver of the suspect vehicle, a black Mazda sedan with out-of-state plates. The Commonwealth submits the above evidence would allow a fact finder to reasonably infer that [A]ppellant knew police were looking for his brother. When [A]ppellant, as the driver of the suspect vehicle, pulled out of the driveway beside 611 Mellon it is reasonable to conclude that he saw Officer Hoyson's vehicle. At the time, there was still daylight and [A]ppellant drove directly toward the marked patrol car which was parked only a half block from the residence. Within a short period, [A]ppellant drove past the patrol car two more times before the officer moved to a different, but nearby, location. Plainly, [A]ppellant did not believe police were looking for him since the patrol car made no move to follow him when he originally left, and he elected to continue to pass Officer Hoyson's vehicle instead of simply leaving the area.

Further support for a finding that [A]ppellant knew Wilson was wanted by police is the fact that upon his final return to Mellon Street, after the officer had moved his car to the second position, [Appellant] briefly stopped in front of 611 where Wilson ran across the porch and jumped into the waiting vehicle which immediately drove off. Such evidence allows for the logical inference that while circling, [A]ppellant contacted his brother and alerted Wilson to the officer's presence and made an arrangement to pick him up in order to get him out of the area.

Soon thereafter, however, Officer Spangler attempted to initiate a traffic stop of the suspect vehicle by activating his lights and sirens and pulling directly behind [A]ppellant, who was planning to make a left turn. At the time, a vehicle unrelated to the case was in front of [A]ppellant. As he approached the driver's side, Officer Spangler both recognized Wilson as the passenger and noticed that the vehicle had not been placed in park which caused him to begin shouting at the driver to turn off the car and remove the keys. Rather than comply with the officer's orders, [A]ppellant looked at the officer, revved the engine and accelerated in the direction of another officer, causing [that officer] to fire at the vehicle. Although [A]ppellant was shot in the hand, he still managed to flee from the scene and avoid capture by engaging in a high-speed chase. The Commonwealth submits that if [A]ppellant had no knowledge that his brother was wanted by police, there would have been no reason for him to ignore Officer Spangler's orders, drive toward another officer and flee from the attempted stop.

Most of [A]ppellant's conduct, as described above, likewise demonstrated his intentional interference with the officers' apprehension of his brother. Appellant provided Wilson with a means of leaving the residence, which [Appellant] knew to be under police surveillance. He also disobeyed one officer's repeated orders to turn off the vehicle, instead electing to accelerate toward another officer to thwart any attempt to apprehend Wilson during the traffic stop. Even the fact that this officer was forced to fire his weapon at the vehicle, causing [A]ppellant to be shot in the hand, did not deter him from preventing his brother's capture. Based on the foregoing, the evidence was sufficient to establish that [A]ppellant had obstructed the administration of law by physical interference. As a result, his conviction for a violation of [section] 5101 should be affirmed.

Commonwealth's Brief at 26-28 (footnote and citation to record omitted).

We agree with the Commonwealth that, assessing the totality of the evidence presented at trial, in the light most favorable to the Commonwealth, it was reasonable for the fact-finder to infer that Appellant knew the officers were attempting to apprehend Wilson, and that Appellant intentionally and physically interfered with the officers' efforts to do so. We conclude that this was sufficient evidence to support Appellant's conviction of obstructing administration of law.

Lastly, Appellant challenges the weight of the evidence to support his convictions.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant presents a lengthy argument in support of his weight-of-the evidence claim; however, only two of his specific arguments were preserved in his Rule 1925(b) statement and addressed by the trial court in its opinion.

- 11 -

Accordingly, we will confine our review to those claims. *See* Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

First, Appellant argues that Officer Spangler's identification of Appellant as the driver was unreliable, as he identified another individual in the initial photo array. Appellant emphasizes that Officer Spangler's initial identification "was made within a day of the events, without hesitation, [and was] based on the facial markings of the individual…." Appellant's Brief at 32. Appellant maintains that, consequently, that initial identification was "unquestionably more reliable than the subsequent identification of [Appellant], and [it] should have been the basis for the trial court to reasonably doubt the identification of [Appellant]." *Id.*

> In rejecting this claim, the trial court reasoned that,
>
> the trial evidence does not indicate that Officer Spangler positively identified anyone as the driver during the original presentation of a photo array. Rather, as Officer Spangler testified, he wasn't certain that anyone in the photo array was the driver when he viewed the first array. This Court believes that Officer Spangler's in-court identification was credible and it was buttressed by the identification of [Appellant] during the presentation of the second photo array.

TCO at 12.

- 12 -

The trial court's decision is supported by the record. During cross-examination of Officer Spangler at trial, he was shown a copy of the initial photo array and was asked if it was "fair to say that [he] identified the male, number seven, in that photo array, a gentleman named Melvin Washington?" N.T. Trial, 11/25-27/13, at 75. Officer Spangler replied, "No." *Id.* at 76. The officer then explained, "My correct statement was this gentleman looks familiar, he has distinguishing face marks, but I can't be 100 percent sure that I told Detectives Rush and Sattler that the face marks look similar to the person that I saw driving…." *Id.* Officer Spangler was later asked about the second photo array he was shown, which contained a picture of Appellant. Officer Spangler testified that "[a]s soon as they showed me this photo array, … I pinpointed the face, the nose. He turned and looked right at me as I had him -- my weapon was already drawn. I had him in my sight." *Id.* at 78. Officer Spangler also identified Appellant, in court, as the person he saw driving the vehicle. *Id.* at 68.

Based on this record, we ascertain no abuse of discretion in the trial court's rejecting Appellant's weight-of-the-evidence claim regarding the reliability of Officer Spangler's identification. The court heard testimony about Officer Spangler's out-of-court identifications of Appellant, and observed the officer identify Appellant during the course of trial. The court was free to determine the credibility of those identifications, and it did not abuse its discretion in believing Officer Spangler's two identifications naming Appellant as the driver.

Next, Appellant attacks the weight of the evidence by arguing that the blood and DNA evidence placed him in the passenger seat of the vehicle. Appellant maintains that "[m]uch speculation on the record occurred as to how exactly blood got on the passenger seat and passenger door handle/armrest from [Appellant] if [Appellant] was, in actual fact, the driver." Appellant's Brief at 31. Appellant asserts that, amidst all of this speculation, "the trial court [did] not and cannot account for the blood spots on the threshold of the passenger side door." *Id.* at 32. Appellant inquires, "How could [Appellant], if he was driving while shot in his right hand, and escaping a police chase at high speed, have bled onto an area that requires the passenger door to be open?" *Id.* Appellant goes on to claim that the trial court gave "no weight whatsoever" to the "uncontradicted expert opinion [of Detective Adams] that the fingerprints of Benny Wilson found on the outside of the driver's door were consistent with someone sitting in the driver's seat and reaching over the door frame and holding the door." *Id.* at 32.

In rejecting this argument, the trial court stated:

While there was evidence presented at trial that [Appellant's] blood and DNA were found in the passenger compartment of the vehicle, [Appellant] was also not excluded as a contributor to DNA found on the driver's side door handle, the steering wheel and the gear shift. Officer Schueler testified that he fired his weapon toward the driver's side area. [Appellant] himself admitted he had been shot. The trial evidence in this case supported the verdict.

TCO at 12-13.

Again, we cannot conclude that the court abused its discretion in denying Appellant's weight-of-the-evidence argument. While some of the physical evidence indicated that Appellant was the driver of the vehicle, there were other aspects of that evidence which indicated he was the passenger. However, the court did not consider the physical evidence in a vacuum, but assessed it in conjunction with the officers' testimony, which the court found to be credible. In light of the totality of all of the evidence presented by the Commonwealth, the trial court's verdict does not shock one's sense of justice, and the court did not palpably abuse its discretion in rejecting Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2015