J-A18018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID GRAVES | : | |
| | : | |
| Appellant | : | No. 927 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 13, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0007043-2020

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: AUGUST 22, 2022**

David Graves (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of aggravated assault of a police officer and resisting arrest.[1]  We affirm.

The trial court recited the following facts:

> On March 13, 2020, Allegheny County Police Officers Brian Wilksmore and Carter Cecotti responded to a call of a domestic dispute at 646 Middle Avenue, Apartment A.  (Non-Jury Trial Transcript ("TT"), held 4/14/21, p. 15).  The dispatched officers arrived on location at approximately the same time.  (TT, p. 15).  Officer Wilksmore approached the house to speak to [Appellant], while Officer Cecotti approached the victim, [Appellant's] partner, Ms. Diane Harris.  (TT, pp. 15, 27).  Ms. Harris was several houses down the street from [Appellant's] residence.  (TT, p. 27).  Ms. Harris, who lives with [Appellant] at the same address, informed Officer Cecotti that [Appellant] had been yelling at her and threatening her.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 5104.

Upon arrival at [Appellant's] residence, Officer Wilksmore observed [Appellant] standing on a top floor balcony. (TT, p. 15). Officer Wilksmore approached the residence and asked [Appellant] to come down to the front door to speak face-to-face. (TT, p. 15). [Appellant] yelled in reply that he would not speak with Officer Wilksmore and would not be going to jail. (TT, pp. 15-16). In response, Officer Wilksmore assured [Appellant] no one was going to jail at this point and that the officers were just making sure "everything was okay." (TT, p. 16). [Appellant] merely reiterated his reticence to come down from the balcony, but he responded to Officer Wilksmore knocking on the front door by moving inside and shouting from the top of the residence's stairs. (TT, p. 16). [Appellant] shouted again that he would not come down to the door, and Officer Wilksmore turned to walk back down the stairs from the front door to his patrol vehicle. (TT, p. 16).

As Officer Wilksmore was walking back to his patrol car, [Appellant] opened the front door. The officer walked back up the front steps, towards [Appellant], asking what was going on. [Appellant] merely said again that he would not be going to jail. (TT, pp. 16-17). It was then that [Appellant] lunged at the officer, and their chests connected. (TT, p. 16). In the words of Officer Wilksmore, "he [Appellant] did what's commonly referred to as a chest bump and he took a step back with fists raised and took a fighting stance." (TT, p. 17).

[Appellant's] aggressive conduct led Officer Wilksmore to inform him that he was under arrest and that he should turn around. (TT, p. 17). Rather than comply, [Appellant] raised his hands further. To avoid being struck, Officer Wilksmore took [Appellant] down to the ground. (TT, p. 17). [Appellant] continued to struggle, and Officer Wilksmore reiterated that [Appellant] should "roll over, put his hands behind his back and stop resisting." (TT, p. 17). During this struggle on the apartment stairs, [Appellant] attempted to strike the officer in "the face or neck area" with his elbow. (TT, pp. 18, 23).

While talking to [Ms. Harris], Officer Cecotti heard Officer Wilksmore repeatedly yelling at [Appellant] to stop resisting. He then ran towards [Appellant's] residence and observed [Appellant] and Officer Wilksmore "fighting on the ground." (TT, p. 28). Officer Cecotti attempted to assist in restraining [Appellant], but the joint efforts of the officers were unsuccessful, leading Officer

Cecotti to deploy his taser at [Appellant]. (TT, pp. 28-29). Officer Cecotti explained that he deployed the taser to avoid further injuries to [Appellant] that could be caused by a continued struggle. (TT, p. 29). [Appellant] was charged with aggravated assault and resisting arrest as a result of this encounter.

Trial Court Opinion, 11/18/21, at 3-5.

Following a non-jury trial on April 14, 2021, the trial court convicted Appellant of the above crimes. On July 13, 2021, the trial court sentenced Appellant to an aggregate 2 – 4 years of incarceration (2 – 4 years for aggravated assault, with no further penalty for resisting arrest). Appellant timely appealed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement. Appellant requested an extension of time, and with the trial court's permission, filed his concise statement on October 18, 2021. The trial court issued its opinion on November 18, 2021.

Appellant presents a single question for our review:

Whether [Appellant's] conviction for Aggravated Assault must be reversed where the Commonwealth failed to provide [*sic*], beyond a reasonable doubt, that he acted with the specific intent to inflict bodily injury or cause bodily injury to Officer Wilksmore?

Appellant's Brief at 4.

In reviewing this issue, we view the evidence in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa. Super. 2018). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused,

beyond a reasonable doubt." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

We have explained:

In conducting [a sufficiency] analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa. Super. 2005). Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. *Id.* The fact-finder is free to believe all, part, or none of the evidence. *Id.*; *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010).

*Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994, 1001 (Pa. Super. 2015).

Appellant claims the trial court convicted him "based on his one-time 'chest bump' of Officer Wilksmore[.]" Appellant's Brief at 14. According to Appellant, the Commonwealth failed to prove his chest bump of Officer Wilksmore "was undertaken with the specific intent to inflict bodily injury or cause bodily injury to the officer." *Id.* at 12. He argues, "at best, the Commonwealth's evidence established [Appellant's] intent was to harass, annoy, or alarm Officer Wilksmore." *Id.* at 19. Appellant emphasizes,

there was *no* testimony as to the height or weight of either [Appellant] or Officer Wilksmore; there was *no* testimony as to how forceful the chest bump was; and there was *no* testimony that the 'chest bump' caused Officer Wilksmore to lose his balance, stumble back or off the porch, or suffer any sort of impairment or injury.

- 4 -

*Id.* (emphasis in original, footnote omitted).[2]

The Commonwealth counters that Appellant "chest bumping" Officer Wilksmore, "and then stepping back to raise his fists and assume a fighting stance, was an attempt to cause bodily injury to the officer." Commonwealth Brief at 2. The Commonwealth references Appellant's "prior encounters with the officers involving domestic problems," and his aggressive behavior with Officers Wilksmore. *Id.* at 1. The Commonwealth maintains Appellant's "verbal defiance and physical acts were sufficient to prove his intent to cause bodily injury." *Id.* We agree.

At trial, the Commonwealth presented two witnesses: Allegheny County Police Detectives Wilksmore and Cecotti. N.T., 4/14/21, at 14-30. Appellant did not testify or call any witnesses in his defense. *See id.* at 5, 34-35.

Officer Wilksmore testified to his professional experience encountering violent individuals. *Id.* at 15. When Officer Wilksmore was dispatched to Appellant's residence, Appellant was yelling from the balcony. *Id.* Officer Wilksmore testified:

> [Appellant] said he was not going to speak to me, that he is not going to jail. I told him at that point, no one's going to jail. We need to make sure everything was okay. He again said he wasn't coming down. I knocked on the door. He then went inside

---

[2] Appellant assails the trial court's determination that "the chest bump was 'with force[.]'" Appellant's Brief at 19 n.5 (citing N.T., 4/14/21, at 37). Appellant contends there was "no testimony to support such an inference" of force. *Id.* As noted below, the statute does not require force or bodily injury.

the apartment at the top of the stairs, yelled that he wasn't coming to the door.

At that point, I started walking down the front stairs back to my patrol car where Officer Cecotti was, and at that point, [Appellant] opened the front door. So I went back up the stairs and started talking to him, and at that point, when I got to the door, [Appellant] lunged at me and his chest came into contact with my chest.

*Id.* at 15-16. Officer Wilksmore repeated:

Almost immediately — because I've had multiple encounters with [Appellant] for the same type of situation, I asked him what was going on. He reiterated that he was not going to jail. At that point, he did what's commonly referred to as a chest bump and he took a step back with fists raised and took a fighting stance.

*Id.* at 17.

As a result of Appellant's actions, Officer Wilksmore told Appellant he was under arrest. *Id.* Appellant then

started to raise his hands even further. At that point, to avoid being struck, I took [Appellant] to the ground. It was actually on the stairs in the apartment building. ... I attempted a second time by telling [Appellant] to roll over, put his hands behind his back and stop resisting and attempted a pain move putting my right thumb behind his left ear. That failed. As I was grabbing his arm, he rolled over a little bit and attempted to strike me in the face or neck area.

*Id.* at 17-18. Officer Wilksmore added that he feared for his safety "when anyone is attempting to strike me." *Id.* at 18. He described domestic disputes as "the most volatile situations that we get dispatched to." *Id.*

Officer Cecotti likewise testified to being dispatched to Appellant's apartment for a "verbal domestic situation." *Id.* at 27. Officer Cecotti was

speaking with Ms. Harris when he heard Officer Wilksmore yelling and saw Officer Wilksmore and Appellant "fighting on the ground." *Id.* at 28.

Following the detectives' testimony, the trial court convicted Appellant of aggravated assault of a police officer pursuant to 18 Pa.C.S.A. § 2702(a)(3).[3] We have explained:

> In Pennsylvania, an individual is guilty of aggravated assault against a police officer if he "attempts to cause or intentionally or knowingly cause a bodily injury to a police officer ... in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). To prove aggravated assault against a police officer, "[t]he Commonwealth need not establish that the [officer] actually suffered bodily injury; rather, **it is sufficient to support a conviction if the Commonwealth established an attempt to inflict bodily injury**." *Commonwealth v. Richardson*, 431 Pa. Super. 496, 636 A.2d 1195, 1196 (1994) (emphasis added).

*Commonwealth v. Hewlett*, 189 A.3d 1004, 1008 (Pa. Super. 2018). Bodily injury is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. With respect to intent,

> The Crimes Code defines the *mens rea* of "intent" as follows:
>
> > **A person acts intentionally with respect to a material element of an offense when:**
> >
> > (i)      if the element involves the nature of his conduct or a result thereof, **it is his conscious object to engage in conduct of that nature or to cause such a result**; and

---

[3] Subsection 2702(a)(3) also applies to the assault of firefighters, probation/parole officers, sheriffs, prison authorities, judges, and numerous other public servants enumerated in Section 2702(c). *See Commonwealth v. Rahman*, 75 A.3d 497, 501 n.7 (Pa. Super. 2013).

> (ii)     if the element involves the attendant circumstance, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1) (emphasis added).

*Hewlett*, 189 A.3d at 1008–09.

In a similar case, *Commonwealth v. Brown*, 23 A.3d 544 (Pa. Super. 2011), an appellant challenged his conviction of aggravated assault under Section 2702(a)(3), claiming he did not intentionally cause an officer bodily injury in resisting the officer's attempts to handcuff him. One officer testified that when he "attempted to handcuff [the appellant], [the appellant] pulled away, threw [another officer] to the ground, and ran away." *Id.* at 560. The evidence also showed the appellant attempted to cause an officer bodily injury by "wildly flailing his arms, and striking the officer repeatedly[.]" *Id.* at 560–61. In upholding the conviction, we stated,

> in a prosecution for aggravated assault on a police officer, the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an *attempt* to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. It was within the jury's province to find that [the appellant], by throwing [one officer] to the ground, and then striking [the other officer] repeatedly by wildly flailing his arms as he resisted arrest, intended to cause injury to the officers.

*Brown*, 23 A.3d at 560 (citing *Commonwealth v. Marti*, 779 A.2d 1177, 1183 (Pa. Super. 2001) (emphasis in original)).

Here, the trial court stated that after "carefully studying the tone and demeanor of the witnesses," it "found that the testimony of Officers Wilksmore

and Cecotti was compelling." Trial Court Opinion, 11/18/21, at 8. The trial court determined Appellant, "at the very least, attempted to cause bodily injury to Officer Wilksmore." *Id.* at 10 (citation omitted). The court provided the following rationale:

> The Commonwealth presented the testimony of Officer Wilksmore, who testified regarding his six and a half years of experience having dealt with violent individuals "[m]ultiple times." (TT, p. 15). Officer Wilksmore was also deeply familiar with [Appellant], testifying that he "had multiple encounters with [Appellant] for the same type of situation." (TT, p. 17). Given this context, the court properly determined that the testimony of Officer Wilksmore reliably established the specific intent of [Appellant] when "he did what's commonly referred to as a chest bump and he took a step back with fists raised and took a fighting stance." (TT, p. 17).
>
> ***
>
> The Commonwealth may establish the requisite intent for aggravated assault using surrounding circumstances by indicating such circumstances which reasonably suggest that a defendant intended to cause injury. *Commonwealth v. Marti*, 2001 PA Super 194, 779 A.2d 1177, 1183 (Pa. Super. 2001). Here, [Appellant] not only lunged and chest bumped Officer Wilksmore, but he further indicated his aggressive intent by falling back into a "fighting stance." (TT, p. 17). Coupled with his repeated assertions that he would not be going to jail, it is clear that [Appellant] intended to physically challenge the officers. His contact with Officer Wilksmore was intended [to] cause injury to an officer that he assumed was present to arrest him and take him to jail.
>
> [Appellant's] challenge is essentially an attempt to retry his case on appeal. Respectfully, this is not a case where the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. Watley*, 81 A.3d 108, 115 (Pa. Super. 2013). Properly viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences in its favor, the evidence was sufficient to prove [Appellant], beyond a reasonable doubt, acted with specific intent to attempt to inflict

bodily injury or cause bodily injury to Officer Wilksmore, as required for a conviction of Aggravated Assault.

Trial Court Opinion, 11/18/21, at 9-11.

Consistent with the foregoing, we conclude the Commonwealth's evidence was sufficient for the trial court to convict Appellant of aggravated assault of a police officer.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022