J-A04010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                           :           PENNSYLVANIA
                           :

            v.                 :
                           :

ANDRE PRIETO                :
                           :
          Appellant       :     No. 1410 EDA 2023

Appeal from the Judgment of Sentence Entered December 9, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001671-2022

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED MAY 7, 2024**

Appellant Andre Prieto ("Appellant") appeals from the judgment of sentence imposed on December 9, 2022, as made final by the denial of his post-sentence motion on April 4, 2023. Upon review, we affirm.

On March 10, 2021, Appellant entered a corner store located at 556 East Wyoming Avenue in the City of Philadelphia to purchase a tobacco product. N.T., Bench Trial, 8/17/22, at 18. The cashier, Alondra Cruz ("Cruz"), informed Appellant they were out of his requested item and suggested a different one. *Id.* at 18-19. Appellant then screamed and argued with Cruz, during which he told her, "I'm not alone," and pulled what she believed was a firearm from his waistband. *Id.* at 19. Appellant did not point the weapon at Cruz. *Id.* at 19-20. She only saw it for a few seconds and testified it was

_____

[*] Retired Senior Judge assigned to the Superior Court.

shorter than eleven inches. *Id.* at 36, 38. Appellant ultimately made his purchase and left the store. *Id.* at 20-21.

About four to five seconds later, Cruz heard about four gunshots. *Id.* at 21. They were "[n]ot too far but not too, too close either." *Id.* Cruz called the police and informed them that Appellant had brandished a firearm, and that she heard gunshots seconds after he left her store. *Id.* at 22. Cruz said she was familiar with the sound of gunshots from when she lived in Puerto Rico and she had heard gunshots in the area before. *Id.* at 32, 37.

Detective Richard Lesinski ("Lesinski") arrived on scene approximately 30 to 60 minutes after the 911 call. *Id.* at 40. While searching the area, he found four 45-caliber cartridge casings in the alley behind 542 East Luray Street, about two and a half blocks from Cruz's corner store. *Id.* at 43, 53. Two bullets struck a second-floor window of a home. *Id.* at 47. No other projectiles or cartridge casings were found in the surrounding blocks. *Id.* at 54-55. Video surveillance showed Appellant walking toward 542 East Luray Street when he left the corner store. *Id.* at 55.

Lesinski assembled a photo array, and Cruz identified Appellant as the person who brandished a weapon at her. *Id.* at 50. On March 24, 2021, Lesinski obtained and executed a search warrant of Appellant's home, and nothing was recovered. *Id.* at 56-57. Nevertheless, on February 1, 2022, Appellant was arrested and charged with: (1) firearms not to be carried without a license; (2) carry firearms in public in Philadelphia; (3) recklessly

endangering another person ("REAP"); (4) discharge of a firearm into occupied structure; and (5) possession of firearm prohibited.[1]

During the non-jury trial, the Commonwealth presented the testimony of Detective Gregory Speck ("Speck"), a firearms expert. *Id.* at 59-60. Speck was provided a still photograph from the store's surveillance video which showed Appellant holding an object in his hand.[2] *Id.* at 61. Speck opined that the object was a genuine firearm.[3] *Id.*

Vanessa Wilder ("Wilder") was on the phone with Appellant during the incident at the store and testified on his behalf. *Id.* at 82. Wilder and Appellant had been friends for 23 years. *Id.* at 86. Her testimony corroborated Cruz's testimony to the extent that Appellant and Cruz got into a verbal argument in the corner store. *Id.* at 83-85. However, Wilder did not hear any gunshots while she was on the phone with Appellant. *Id.* at 86.

Additionally, Wilder knew Appellant to carry a loaded BB gun because he had been robbed on multiple occasions. *Id.* at 95-96. She explained that after Appellant was arrested, he told her the BB gun was in a bag in the backseat of the vehicle they shared. *Id.* at 92-93. Appellant asked her to

---

[1] Count 4 was dismissed after a preliminary hearing for lack of evidence, and Count 5 was withdrawn by the Commonwealth.

[2] The record is silent as to why the surveillance video was not played and whether the expert was shown the video or just the still photograph in reaching his opinion.

[3] As Speck's testimony is at issue on appeal, it will be discussed in more detail below.

take the BB gun to his former attorney in February or March 2022.[4] *Id.* According to Wilder, the attorney did not want the BB gun, so she put the bag with the BB gun back in her car and forgot about it. *Id.* Thereafter, Wilder went to retrieve the bag and discovered it was missing. *Id.* at 94. She believed one of her cousins stole the bag with the BB gun, as well as her taser. *Id.* at 87. As a result, she was unable to turn it over to Appellant's current attorney. *Id.* 97-98.

At the conclusion of the non-jury trial, the trial court found Appellant guilty of firearms not to be carried without a license, carry firearms in public in Philadelphia, and REAP. Sentencing was deferred to October 28, 2022 for the completion of a pre-sentence investigation. *Id.* at 115-16. Sentencing was further deferred to December 9, 2022 for Appellant to provide proof of his past employment. *See* N.T., Sentencing, 12/9/22, at 3. On December 9, 2022, Appellant was sentenced to an aggregate term of 11 ½ to 23 months of incarceration, followed by three years of probation.

On December 14, 2022, Appellant filed a post-sentence motion for a new trial and argued that the verdict was against the weight of the evidence.

_____

[4] At the time, Appellant had a privately retained attorney, who entered their appearance on February 11, 2022. The record does not contain a motion to withdraw or a subsequent entry of appearance. The omnibus pretrial motion was filed by the public defender's office on April 6, 2022. The trial court erroneously stated that the defense was in constructive possession of the firearm and the decision not to produce it created an adverse inference that the weapon was operable. N.T., 6/7/23, at 5. We want to be clear that, based on the testimony, Appellant's **current** attorney did not have constructive possession of the weapon.

*See* Post-Sentence Motion, 12/14/22. The trial court denied the motion, and this timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises three issues for our review:

1. Was the evidence insufficient to sustain convictions under the Uniform Firearms Act where the Commonwealth failed to prove beyond a reasonable doubt that the object [Appellant] possessed was a firearm?

2. Was the evidence insufficient to sustain a conviction for recklessly endangering another person where the Commonwealth failed to prove beyond a reasonable doubt that the purported firearm possessed by [Appellant] was loaded with live ammunition such that it put another person at risk of death or serious bodily injury?

3. Did the [trial] court abuse its discretion in denying [Appellant]'s motion for a new trial where the verdict was so against the weight of the evidence as to shock the conscience?

Appellant's Brief at 3.

The standard we apply in reviewing the sufficiency of the evidence is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 5 -

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (internal citations omitted).

In his first claim, Appellant contends that the evidence is insufficient to sustain his convictions of (1) firearms not to be carried without a license (18 Pa.C.S.A. § 6106), and (2) carrying firearms on public streets or public property in Philadelphia (18 Pa.C.S.A. § 6108). Specifically, Appellant argues that the Commonwealth failed to prove that the object he possessed was a firearm. **See** Appellant's Brief at 16. He further argues that Speck's testimony "was equally consistent with [Appellant] possessing a BB gun inside the store as with his possessing a genuine firearm," and "a conviction based on evidence in equipoise cannot stand." Appellant's Brief at 18. We disagree.

For the charge of firearms not to be carried without a license, the Commonwealth must prove: (1) that the weapon was a firearm; (2) that the firearm was unlicensed; and (3) that the firearm was concealed on or about the person outside of the home or place of business. 18 Pa.C.S.A. § 6106; s**ee also Commonwealth v. Hewlett**, 189 A.3d 1004, 1009 (Pa. Super. 2018), *appeal denied*, 197 A.3d 1176 (Pa. 2018). To sustain a conviction for carrying firearms on public streets or public property in Philadelphia, the Commonwealth must prove that a defendant was in possession of "a firearm, rifle or shotgun at any time upon the public streets or upon any public property in [Philadelphia]" without a license. 18 Pa.C.S.A. § 6108(1). For both charges, the Commonwealth must prove Appellant possessed a "firearm", which is defined as:

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102 (definitions).

While styled as sufficiency claims, Appellant is in fact challenging the trial court's credibility determinations, and he is essentially asking us to reweigh Speck's testimony and the still photograph. But as mentioned above, the trial court's credibility determinations must be upheld as long as they are supported by the record, and the evidence must be construed in the way most favorable to the verdict winner.

In this case, the trial court found that the Commonwealth proved the object in Appellant's hand was a firearm based on the testimony of Speck and Wilder. *See* Trial Court Opinion, 6/7/23, at 4. The trial court summarized the testimony of those witnesses as follows:

[Detective Speck] made multiple, specific observations that support the finding that the weapon depicted in the surveillance photo was a firearm. The shadowing of the recoil bushing indicated the firearm was real and not a BB or pellet gun molded from plastic. Detective Speck also relied on the different colors of the sight and the gun. The appearance of wooden grips confirmed this observation. On cross examination, Detective Speck was shown pictures of both real and plastic 1911s and was able to distinguish them. He also correctly identified a model BB gun in a photograph offered by the defense.

* * * *

- 7 -

The evidence consisted of more than Detective Speck's expert testimony. [Appellant]'s girlfriend also testified. Vanessa Wilder testified that [Appellant] had told her he feared being robbed. Wilder also testified she had recently possessed [Appellant's] gun, had told defense counsel about it, but had not produced it to defense counsel. The constructive possession of the firearm by the defense, and the decision by the defense not to produce it at trial supports an adverse inference that the gun was an operable firearm, consistent with Detective Speck's expert testimony.

*Id.* (internal citations omitted).[5]

_____

[5] We note that the trial court's 1925(a) opinion included facts not supported by the record. First, Speck was not able to distinguish between both real and plastic 1911 pistols. During cross examination, Speck was shown four photographs and asked to determine whether the object was a firearm or a BB or pellet gun. *See* N.T., 8/17/22, at 73-76. Speck was also unable to identify the object in the first two photographs because "there is no picture of the bore" and "the bore is not pointed towards the viewer." *Id.* at 74. Speck was shown a photograph of a BB gun and testified that even though its bore was partially visible in the photo, "it's a black and white copy so it lacks shadowing that I could normally see," implying that he would be unable to identify it if he did not already know what it was. *Id.* at 76.

Second, while Speck correctly identified a photograph as a BB gun, he testified that it was because of the "caliber marking on the side .177 caliber, which means this is a BB gun," not based on any distinguishable feature. *Id.* Speck admitted that the three photographs of unidentified objects had similar features with different writing on the side. *Id.* at 75.

Lastly, Wilder did not directly testify that Appellant possessed a firearm. *Id.* at 87. She instead testified that Appellant was known to carry a BB gun. *Id.* Moreover, the trial court incorrectly stated that defense counsel made a conscious decision to not produce the weapon. Wilder testified that she had attempted to provide the BB gun to Appellant's *former* attorney when he was arrested in February or March 2022. *Id.* at 88. By the time Appellant's *current* attorney asked Wilder about the BB gun, it had already been stolen from her vehicle. *Id.* at 93-94, 97-98. These inaccuracies, however, have no effect on our disposition in this case because the record nonetheless contains evidence that supports the trial court's findings.

We find that there was sufficient evidence to support the trial court's finding of fact that the object in Appellant's hand was a firearm. The question of whether the object was a firearm is an issue of fact to be determined by the trier of fact. Speck identified several distinguishing features that lead to his conclusion that Appellant possessed a firearm: (1) a thumb actuated safety; (2) a black ramped rear sight; (3) a black front sight; (4) an unobstructed bore large enough to expel a projectile larger than a BB or a pellet; (5) the wooden grips; (6) the ejection port; and (7) the shadowing located off the top of the recoil bushing. N.T., 8/17/22, at 61-62. The fact that the rear and front sights are a different color than the rest of the object is significant because the sights on a pellet or BB gun model would be the same color because they are generally made of shaped molded plastic or a continuous piece of metal. *Id.* at 63-64. On a firearm, the sights are individual pieces that are slid into a groove cut into the metal slide and may be a different color than the rest of the firearm. *Id.* Therefore, Speck opined that the object in Appellant's hand is more consistent with a firearm because the sights are a different color.

Regarding the muzzle bushing, Speck explained that a pellet or BB gun clone of a 1911 pistol could have the same general shape as a firearm, but would be made of molded plastic or a continuous piece of metal. *Id.* at 63. Thus, the shadowing around the muzzle bushing in the still photo of Appellant would not be present if the object was a pellet or BB gun model. *Id.*

Therefore, viewing the evidence in light most favorable to the Commonwealth, we find there was sufficient evidence to enable the trial court to find every element of the firearms offenses beyond a reasonable doubt. *See Brown, supra.*

In his second claim, Appellant contends that the evidence was insufficient to support his conviction of recklessly endangering another person ("REAP"). Specifically, he asserts that "the Commonwealth failed to prove that the item in his hand was loaded with ammunition such that it posed an actual risk of death or serious bodily injury." Appellant's Brief at 24. He further asserts that the Commonwealth must prove actual, present ability to inflict harm and not a mere apparent ability. *Id.*

"A person commits [REAP] . . . if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "Serious bodily injury" is defined as "[i]mpairment of physical condition or substantial pain] which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301 (definitions). To sustain a conviction for REAP,

> the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The mens rea for [REAP] is a conscious disregard of a known risk of death or great bodily harm to another person. **Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious**

- 10 -

> **disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death**.

*Commonwealth v. Hopkins*, 747 A.2d 910, 915-16 (Pa. Super. 2000) (internal citations and quotation marks omitted) (emphasis added).

Here, the trial court found sufficient evidence to convict Appellant of REAP:

> Pointing an unloaded firearm at a person, without more, does not constitute reckless endangerment, but pointing a loaded firearm does. *Commonwealth v. Gouse*, 429 A.2d 1129, 1131 (Pa. Super. 1981). The still photo from the surveillance video shows [Appellant] holding the firearm in his hand above the store's counter. Cruz, the store attendant, is just feet from him, on the other side of the counter. The surveillance video also shows [Appellant] had three fingers on the gun's grip. This supports an inference that his index finger (not visible) was on or near the trigger. Finally, the testimony of [Appellant]'s girlfriend, Vanessa Wilder, summarized above, supports an inference the gun was loaded.

Trial Court Opinion, 6/7/23, at 4-5.

Viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there is sufficient evidence to support the REAP conviction. As we previously determined that Appellant was in possession of a firearm, the remaining question is whether it was loaded and whether Appellant's act of brandishing the firearm posed an actual, apparent ability to inflict serious bodily injury. We find that, under the circumstances of this case, it does.

Although Cruz testified that Appellant did not directly aim the firearm at her, the still photo shows Appellant pointing the firearm over the counter. Since Cruz was on the other side of the counter, an inference can be drawn

- 11 -

that Appellant pointed the firearm in her general direction with a conscious disregard for her safety, as well as a present ability to inflict great bodily harm or death. *See Hopkins*, 747 A.2d at 915-16.

Moreover, during the act of brandishing the firearm, Appellant told Cruz "I'm not alone," which could be interpreted as a threat. Although Wilder testified that she knew Appellant to carry a loaded *BB gun* and not a firearm, her testimony supports the inference that Appellant carried a loaded weapon. Therefore, we find there was sufficient evidence for the trial court as the fact-finder to find every element of the crime was proven beyond a reasonable doubt. *See Brown, supra.*

Alternatively, Appellant contends that the verdicts were against the weight of the evidence. Specifically, he claims that "the conviction[s] [were] based entirely on speculation and conjecture, unsupported by any physical evidence." Appellant's Brief, at 26. We disagree.

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Our standard of review is well-settled:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the jury's verdict if it so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Begley*, 780 A.2d 605, 619 (Pa. 2001) (internal citations omitted).

- 12 -

Here, Appellant fails to establish, and our review of the record fails to convince us, that the trial court's verdicts were so contrary to the evidence as to shock one's sense of justice.  Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2024